## Case No. 4,793.

FINLAYSON v. CHICAGO, B. & Q. R. CO.

[1 Dill. 579; [1] 5 West. Jur. 342.]

Circuit Court, D. Iowa. May Term, 1871.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Gillmore & Anderson, for plaintiff.

Henry Strong and Thos. F. Withrow, for defendant.

Before MILLER, Circuit Justice, and DILLON, Circuit Judge.

MILLER, Circuit Justice (orally charging jury). This case which you have heard with patience, and which has been very ably presented to you, belongs to a class which is becoming very common in this country. All great motive agencies, when brought into dense communities, endanger life and property to some extent. Railroads, in their motive power, and in the manner in which they are necessarily conducted, are powerful instruments of good, and, also, to some extent, of evil. It is, or it ought to be, the object of all good citizens, to increase the good and to diminish the evil.

Those of you who have traveled here from a distance to attend this term of court, on railroads, and who remember the inconvenience, and, I might say, the suffering of the same journey in the old stage coaches, can well appreciate the good which railroads do; and those of you who have listened to the detailed testimony in this case have seen the capacity of a railroad for evil. There can be no question, however, but that they are necessary and useful. We should, therefore, by a just administration of the law, so far as it depends upon courts and juries, and by proper legislation, so far as it depends upon legislative bodies, do all we can to diminish the evils which seem, in some sense, to be incidental to these great motive powers.

I am, gentlemen, happy in the consciousness that I am addressing a jury who will consider the case before it without being influenced by any prejudice against railroads, on the one hand, or by any undue sympathy for the unfortunate woman who is the plaintiff in this case, while you would do her full and complete justice. If the case presented to you is, unfortunately, not altogether new in some of its features, certainly not new in the fact that human life has been destroyed by a railroad train, it is, on the other hand, according to the researches of counsel engaged in the case, novel in one feature at least; and that is, that those researches have not enabled counsel to present any reported case where suit has been brought to recover for an injury to the person, received while the party was walking along on the track of the railroad company voluntarily. In that respect the case before you is novel, and presents to me, at all events, who am to declare the law applicable to it, something of an embarrassing question.

The action upon which you are now to render a verdict is founded essentially in its nature upon the charge of negligence on the part of the railroad company in performing some duty which is required of them by law, in regard to the transaction presented to you. But this class of cases nearly always presents two questions which are correlative, and this case is not an exception to that general rule. These questions relate in the first place to the negligence and want of care on the part of the defendant, and in the second place to the care and diligence on the part of the plaintiff. The first question to be determined is, whether the defendant, in the sense of the law, has been negligent in regard to the transaction which has been presented to you, and if this is found to be so, the second question arises whether the plaintiff, on his part, used such care and diligence that he is exempt from blame in the matter. In the case before you, then, you are first to consider whether, under all the circumstances, the defendants were guilty of negligence. The question of negligence, by which, of course, is always meant that want of care and diligence which it is the duty of a party to observe, is always one which must be considered in regard to the circumstances. There is no absolute rule of negligence or diligence. The diligence required of a party is, that care and attention to the matter in hand which an ordinarily prudent, careful man would exercise in regard to his own transactions. In this case the uncontradicted evidence on both sides is, that the man who was killed was walking on the track of the defendant corporation along the same course the train was going that struck and killed him, and the question arises, what degree of precaution or care a railroad company or its servants are bound to take to guard against injuring a man under such circumstances.

I instruct you as a matter of law, in the first place, that the officers of this corporation, the men who had charge of this train, had a right to presume that this man was a man of sound mind and good hearing, and that the case is not to be considered by you in regard to the diligence of these officers as if he were a dumb man, known to the parties, nor as if he were a child which the parties could see was incapable of taking care of itself.

I instruct you that the agents of the railroad company had a right to suppose he was such a man, of sound mind and sound hearing, and that he would take reasonable care to protect himself in case of danger. Under that view of the case, I further say to you that these agents or officers of the company were bound to give a reasonable and fair notice of their approach, when they found that the man was not taking steps to get out of the way—such a notice as would reach a man under ordinary circumstances of good hearing, and who had his attention alive to his situation. If, then, you believe that the bell was rung and that the whistle was sounded, in time to enable this man to get off the track, these parties are guiltless, and the company is not liable. If, on the other hand, you believe they delayed making any signal at all until it was entirely too late for him to get off the track, that they being aware of his presence, delayed to ring the bell or sound the whistle, until he could not have stepped aside and saved himself—in that case there was negligence on the part of these employés, for which the railroad company is responsible. And I further say to you that the fact that in the place, and at the time where this accident occurred, there was a noise arising from the work on the canal, and a confusion arising from other trains running along the canal bank they were working on, which might be confounded with other trains, and that this fact was well known to the man who was killed, does not vary the matter. That was reason for additional care and diligence on his part; for knowing that he was traveling along a place where there was a loud noise that would impair his power of hearing any bell from a train, or a whistle from a train, it was his duty to be more vigilant and more careful, and to watch closely to protect himself. If you find that within this definition of what the duty of the railroad company was, they discharged that duty; if you find that they blew the whistle in time for this man to get off,—not to run to some place that he might choose to get off,—but if they rang the bell and blew the whistle, in such time as any reasonable man of good hearing could have heard it, and got off instantly, without deliberation or trying to go farther to select a place to get off, then the defendants are not liable.

If they delayed ringing the bell or sounding the whistle until they were right on him, then that delay would constitute negligence.

If, however, you find that the railroad company's agents were guilty of negligence, there is still a farther inquiry before you can find a verdict in behalf of the plaintiff, and that is the amount of care and precaution which he took to avoid this accident. I lay it down to you that he had no legal right to be on that railroad track; the track at that place not being a crossing or any part of a public highway, was private property; that it was built for other purposes; that it was not built to be walked upon by the public, and the fact that persons did walk upon it, however frequently and however common, does not change the proposition of law. This man had no right to be there, and he should not have been there. It does not follow, however, because he was there unlawfully, that the other party could run him down; but it does follow that he being on private property of the company, on a track which is used for a purpose which is dangerous to human life, well known to him, that he being in a place where he ought not to be, that he was bound to use every precaution, every diligence, every care, against the possibility or probability of any danger which might happen to him there.

This was his duty, and it was imperative; and if you find, in the language of one of the counsel for the plaintiff, that he was going along the track with his hands in his pockets, his head down, and his attention abstracted from everything around him, then he was guilty of such negligence as forbids recovery. No man has a right to go upon a railroad track in such a place, and go along in a state of abstraction, careless of what might happen to him; and then turn around and say to the railroad company, however negligent they may have been, You are responsible for my safety. If he is careless himself, it cannot be expected that the railroads can be made to take care of him, and pay for him if he is killed. Being on the track, and walking in a direction where a railroad train might overtake him, reasonable care required of him that he should be vigilant and watchful to discover the approach of any train, and especially from behind; and this vigilance on his part should be increased, from the fact that the noise from the trains and the blasting on the canal, would tend to prevent his hearing the noise made by the approach of a car or train, or its bell, or its whistle.

The jury found a verdict for the defendants. Judgment accordingly.