# CHARLESTON.

## SPICER *v.* CHESAPEAKE & O. R'Y CO.

*(HOLT, JUDGE, absent.)

Submitted June 20, 1890.—Decided December 13, 1890.

1. DAMAGES—RAILRAOD COMPANIES.

A person using a railroad track as a footpath for his own convenience elsewhere than at a lawful crossing, and injured by a train while so doing, can not recover damages of the railroad company, unless it be guilty of wanton or gross negligence.

2. DAMAGES—RAILROAD COMPANIES.

The statute (Code, c. 54, s. 61) requiring the bell to be rung or a whistle to be blown at crossings is designed for those passing over the track at such crossings, not for those using the track elsewhere for their convenience as a footpath.

3. DAMAGES—RAILROAD COMPANIES.

Said statute is complied with when either the bell is rung or the whistle blown, both not being required.

*Gibson & Michie* for appellants, cited 15 W. Va. 629; 27 W. Va. 163; 30 W. Va. 228 P'ts 4, 5, 6, Syll.; 10 S. W. Rep. 342.

*Simms & Enslow* for defendant in error, cited:

19 Am. & Eng. R. R. Cas. 344; 100 Mass. 208; 10 Ga. 207; 71 Ill. 500; 19 Am. & Eng. R. R. Cas. 83; 62 Md. 479; 30 Gratt. 602; 8 Am. & Eng. R. R. Cas. 217; 97 Mass. 276; 15 Am. & Eng. R. R. Cas. 439; 83 Va. 577; Sher. & Redf. Neg. § 471, 476; 95 U. S. 697; 62 Ia. 624; 17 N. W. Rep. 878; 59 Mich. 257; 42 N. Y. 468; 6 R. I. 211; 19 Am. & Eng. R. R. Cas. 98–101; 40 Ohio St. 121, 124; 103 Ind. 27; 2 Thomp. Tr. § 1803, 1804; 55 Ill. 386; 95 U. S. 597; 114 U. S. 615; 33 Ind. 335; 99 Am. Dec. 135 n.; 7 W. Va. 233.

BRANNON, JUDGE:

This was an action of trespass on the case in the Circuit Court of Cabell county by Lucetta Spicer, administratrix

---

*Case submitted before Judge Holt's appointment.

of Nicholas Spicer, against the Chesapeake & Ohio Railway Company, to recover damages for the death of her son Nicholas Spicer. The trial of the case resulted in a verdict and judgment for the defendant, and said administratrix brings this writ of error.

The first point complained of in this Court is that the court refused the plaintiff's instructions Nos. 2 and 3.

"Instruction No. 2. If the jury believe from the evidence that there was a safe way and an unsafe way in which the defendant might have run its train, which it is alleged struck and killed the plaintiff's intestate, from its depot to its shops, and that the defendant negligently, and without good reason, chose the unsafe way, and that such unsafe way was dangerous to said intestate, then the defendant was guilty of negligence."

It needs no authority for the proposition that an instruction from a court to a jury should be couched in clear, intelligible language, and be suited to the nature of the case under the evidence, and such in its language and meaning as may be readily applied by the jury to the evidence. This instruction, while its language is clear, is so general that I confess I am scarcely able to understand its special purpose. It speaks of a safe and unsafe way of running the train. There was evidence tending to show that the train was exceeding the rate allowed by company rules in the yard, and evidence to the contrary, evidence that no signal was sounded, and evidence that one was sounded. Does the instruction refer to the speed of the train, or the want of signal? Should it not have pointed out? But, aside from that, it asserts that if the unsafe way was chosen, and that way was dangerous to the deceased, it was negligence in the company. That is not a correct legal proposition, under the nature of the case as developed by the evidence. It imports that the company was under a duty to the defendant not to choose the unsafe way.

Take the evidence. The unfortunate Nicholas Spicer, between eight and nine o'clock of the dark night of the 27th day of October, 1888, was walking on the railroad track in the yard of the Chesapeake & Ohio Railway Company, in the city of Huntington, where this company had

five tracks, and kept its engine-houses, machine-shops and other facilities for the transaction of its vast business, where it made up numerous trains, and numerous trains arrived and departed.    He is not at a street-crossing, but purely for his own convenience is walking on the track from Sixteenth to Twentieth street; and, seeing a train moving towards him on the track on which he is walking, he steps upon the next track; and being blinded by the head-light of the engine approaching, and his hearing dulled by it, or more likely because he did not look for a train on the track to which he stepped, he is scarcely on that track before he is struck by a train which is being backed from the depot to the shops, receiving injury, from which he dies in about an hour.    No one questions that the company was simply exercising on ground belonging to it its lawful business, and that the deceased was not in the public highway, but using the track for his own convenience, when he could have used a walk or path but a few yards distant, outside the tracks, or an alley but a short distance further away.    What duty did the company owe him under these circumstances except that it should not wilfully or wantonly hurt him?    Where could the deceased have found a more deadly, dangerous walk ?    And he was fully aware of this, for he was an employe of the company, was well acquainted with the yard and works of the company there, but not in service in the yard nor on duty then or there.    Indeed, his daily contact and familiarity with the railroad operations lulled him into a feeling of security and negligence which cost him his life, when but twenty one or twenty two years of age.    He was in possession of all the natural senses and faculties which tell of danger, and aid us in self-preservation amid perils surrounding us.

Public policy, looking to the safety of not only those who walk on railroad tracks, but of employes and passengers on trains, requires that the law forbid the use of railroad tracks for that purpose.    The interests of the company using the track are of minor importance herein.    "The law is well settled that a person has no right to be upon a railroad track, either walking along or otherwise, except at a crossing, and then only in crossing.    The track is the

private property of the company. It is not built to be walked on, and the fact, that it may have been used to walk on, however frequently and commonly, will not change the law in this respect. It does not follow from this, however, that walking there one may be wantonly injured by the company; but it does follow, in the language of Justice Miller (*Finlayson* v. *Railroad Co.*, 1 Dill. 579) that 'being on the private property of the company, on a track which is used for a purpose which is dangerous to human life,' one so situated is 'bound to use every precaution, every diligence, every care, against the possibility or probability of any danger;' that in such case the servants in charge of a train have 'a right to presume' that a man on the track is 'of sound mind and good hearing,' and will get off in time to avoid the danger; that the case of a man is not as that of 'a child,' or a 'dumb man known' to such servants to be dumb; and that therefore the train is not obliged to stop, but is only bound to the ordinary care of warning, by whistling and bell ringing, if the person is seen by the persons in charge of it, which are due to all persons, on general principles. This done in time for avoiding the danger, the company are not liable." So we find the law stated in 2 Ror. R. R. 1027.

The track of a railroad company is the exclusive property of such company, upon which no unauthorized person has a right to be. "Any one who travels upon such track as a footway, and not for any business with the railroad, is a wrong-doer and a trespasser; and the mere acquiescence of the company in such user does not give the right to use the track, or create any obligation for special protection," is the language of the Supreme Court of Maryland in *Railroad Co.* v. *State*, 62 Md. 479. See *Railroad Co.* v. *Sherman*, 30 Gratt. 602, where it was held that if the company was negligent, the contributory negligence of deceased forbade recovery. Except at crossings, "the man who steps his foot upon the track does so at his peril; the company has not only a right of way, but it is exclusive at all times, and for all purposes"—is the language used by the Pennsylvania Supreme Court in *Mulherrin* v. *Railroad Co.*, 81 Pa. St. 366. There is no evidence

tending to show that the company gave consent to the use of its grounds for pedestrians; very little to show any tacit consent in the fact of its use by pedestrians.

But this mere user would not render the company liable, as appears from above citations. President MONCURE said in *Railroad Co.* v. *Sherman, supra,* as to this point: "That the defendant did not prevent S. from walking on the track, or object to his doing so, was a mere permission to him to do so at his peril. He knew the danger he thereby incurred, and how careful he would have to be to guard against it; and, if he chose to encounter it on his own responsibility, the defendant was willing he should do so. It can not be inferred from such permission that the defendant intended to impair or diminish in the least degree its right to the full use of its road. To have that effect, the evidence of their consent should at least be very clear, if it could be given at all."

The fact, that people have often trespassed on the track, and the company have not stopped them, does not imply consent to so use the track, and will not create any right in the public to use it. *Railroad Co.* v. *Brinson,* 70 Ga. 207. In *Railroad Co.* v. *Godfrey,* 71 Ill. 500, it was said that the fact, that the company did not see fit to keep people off the track, gave people no right of way. At most, there was only a passive acquiescence in its use, and, like a mere naked license to pass over an estate, imposed no duty to provide safeguards against accidents incident to such use, and the company would only be liable for willful injury or gross negligence. See *Grethen* v. *Railroad Co.,* 22 Fed. Rep. 609.

But it is said that a duty was on defendant to sound the whistle or bell; and I am inquiring what duty was on the defendant to render this instruction proper. For whose benefit is this signalling duty designed? It is not intended for trespassers walking the track, but for the public at lawful crossings. Pat. Ry. Acc. Law, § 160; *Bell* v. *Railroad Co.,* 72 Mo. 50; 2 Shear & R. Neg. § 470; 2 Ror. R. R. 1004. In *O'Donnell* v. *Railroad Co.,* 6 R. I. 215, it is held that one walking on the track can not recover for an injury near a crossing, and within such distance thereof as the

law· required the bell to be rung. In *Harty* v. *Railroad Co.*, 42 N. Y. 468, it was held that the statute requiring bell to be rung a certain distance from crossing, and kept ringing until the crossing has been passed, was intended for crossings, not for persons on the track elsewhere. These cases are referred to as law in the United States Supreme Court as applicable to the West Virginia statute in the opinion in *Randall* v. *Railroad Co.*, 109 U. S. 478 (3 Sup. Ct. Rep. 322). It is true that, though the deceased was thus on the track at his own peril, yet as above stated, the company was under duty to do no willful or wanton injury to him, and not to be guilty of gross neglect, but to give him warning as soon as he was discovered, for till then it was under no duty. Note 2 to section 483, 2 S. & R. Neg. Deceased being a trespasser, the company is liable only for willful injury. *Railroad Co.*, v. *Harman's Adm'r*, 83 Va. 554 (8 S. E. Rep. 251). But there was no evidence to show any willful or wanton injury or gross negligence. The train was backing. 2 Whart. Neg. § 471, says that is not negligence. There was a watchman on the rear car, and on its platform a red light, and the watchman had a white lantern besides. He says that, when the deceased stepped from one track on to the other, he (the brakeman) who was watchman, had no time to move from his track before deceased was struck. There is no showing that he could have given any warning or lifted hand or voice to save the unfortunate man from the dire calamity which befell him almost in the twinkling of an eye. He was not on the track of this train till he stepped on to it, and the deep darkness of the night would have prevented the brakeman discovering him sooner. As thus, in any view, the defendant owed the deceased no duty, I can not see how there was any error in refusing an instruction which imported that it did owe him a duty. The accident was inevitable. *Hawker* v. *Railroad Co.*, 15 W. Va. 628.

"Instruction No. 3. The jury are instructed that it is a question of fact for them to say whether the intestate should have stopped to look, or whether under the circumstances, as detailed by the evidence in this case, he had the right to rely on being given timely warning of the approach of a

train." What I have above said as to the law and evidence in another connection has anticipated this instruction, and shows that it was rightly refused. It is idle to say that it was a question of fact for the jury to say whether a party on the track, bound to the utmost care and watchfulness as shown above, unlawfully there too, should have looked for another train, or whether he had right to wait for signals, when the signals were not designed by law for him.

The second assignment of error is in giving six instructions asked by defendant as follows :

" No. 1. The jury are instructed that every person of ordinary intelligence is bound to know that a railroad yard, with numerous switches, tracks, and appliances, where engines, cars, and trains are frequently passing and repassing, is a place of more than ordinary danger, and it becomes his legal duty, if he goes on such yard, to use corresponding care and caution to avoid injury ; and, even though the defendant company, in this cause, may have permitted persons to pass along and over its tracks in such yard, still, if the jury believe from the evidence that Nicholas Spicer was walking along on the track in the yard, and using the same as a footpath on going from one part of the town to another, it was negligence on his part, to employ such track in said yard for such purpose without exercising the greatest care and caution to discover the approach of trains, and avoid being struck by them."

" No. 2. The court instructs the jury that the statute of West Virginia does not require both the sounding of the whistle and the ringing of the bell on an engine or train approaching a public street or crossing ; either the sounding of the whistle or the ringing of the bell for a time sufficient to give notice of the approach of such train before such street or crossing is reached, is sufficient."

" No. 3. The court instructs the jury that persons who live in the vicinity of a railroad, and use the tracks or spaces between the tracks as a footpath, although used by the public generally without objection on the part of the railway, go there at their own risk, and enjoy the license subject to the perils."

"No. 4. The court instructs the jury that it is the duty of

a person either about to cross or walk along a railroad to look in every direction from which a train may approach before going upon a railroad, and if he fails to look, when he could have seen the approaching train if he had looked, it is such proximate contributory negligence as will prevent him from recovering any damages for injuries sustained by being struck by a train immediately after going upon the track, unless the servants of the railroad could have seen or discovered him in time to avoid his negligence in getting upon the railway."

"No. 5. The court instructs the jury that, if they find from the evidence that Nicholas Spicer was injured while walking upon the track of the defendant's railway not in a public road or crossing of a public road, the fact that no signals were given by the servants in charge of the defendant's train for the crossing of 20th street would not be such neglect as would render the company liable for the injury to Nicholas Spicer, unless the servants in charge of defendant's train knew, at the time the train was being backed, or could have known, by the exercise of care, caution, and prudence, that Nicholas Spicer was on the track, and then failed to give any signals or warning to him of the approach of the train."

"No. 6. If the jury believe from the evidence that the plaintiff's intestate, Spicer, was walking along the railroad tracks of the defendant company within what is known as the 'Huntington Railroad Yard,' used by the defendant for the purpose of switching and making up trains; and that there were several tracks and numerous switches therein, and trains almost constantly passing and repassing over and along the said tracks at all hours of the day and night; and that while he was so walking along the said tracks in the said yard, in order to avoid one train coming towards him along one of the tracks, he stepped over onto another track, directly in front of a train going east, without looking back to see if there was such a train on such track; and that, if he had so looked back, he could have seen the train that struck him before he stepped onto such track, and have avoided being struck by it—then such failure to so look back was negligence on the part of said Spicer; and, unless

the jury find from the evidence that the said Spicer was seen, or could have been seen, by the train-men in charge of the train that struck him for a sufficient length of time after he stepped on the track in front of the train, before he was struck, to have enabled them to stop the train, or give Spicer sufficient warning to get off of the track, then they must find for the defendant."

I refer to what has been already said as pertinent to these instructions. Anything here said is substantially but repetition.

As to the first Justice Miller said, in the quotation above given from Rorer, that the party must, under circumstances like these, use "every precaution, every diligence, every care against the probability or possibility of any danger." *Finlayson* v. *Railroad Co.*, 1 Dill. 579. President Moncure said in *Railroad Co.* v. *Sherman*, 30 Gratt. 628, in the Virginia Court of Appeals: "He knew the danger he thereby incurred, and how careful he would have to be to guard against it. * * * The instinct of self-preservation seems to require that S. should use incessantly, while he was walking upon the track, both his eyes and his ears, to discover any signs of danger from behind or before. Had he heeded this plain admonition, he would certainly have escaped all danger. His walking upon the track, instead of in one of the paths on the side of it, and his not properly looking at or listening for danger while so doing, have been the chief, if not the only, cause of death, and at least made him guilty of contributory negligence."

Even before going on to the track at public crossings, where the traveller has a right to be, he must look and listen carefully. 2 Shear. & R. Neg. § 476; 1 Ror. R. R. 533; *Beyel* v. *Railroad Co.* infra p. 538 *Railroad Co.* v. *Houston*, 95 U. S. 697. How much greater care is required of a party going on to a track not at a crossing, at night, in a railroad yard, full of trains moving in all directions. The degree of care called for by instruction No. 1 is not greater than the law requires, and is substantially like one approved in *Railroad Co.* v. *Baches*, 55 Ill. 386. See also 2 Thomp. Trials, § 1803.

As to second instruction, our statute does not require both blowing of whistle and ringing of bell even at cross-

ings. The statute must call for both, to make both obligatory. 1 Ror. R. R. 536.

As to the fifth, see cases above cited, that signals are not for benefit of trespassers. Its doctrine was approved by *Railroad Co.* v. *Depew*, 40 Ohio St. 121. I see no error in any of the defendant's instructions. There is nothing in *Nuzum* v. *Railroad Co.*, 30 W. Va. 228 (4 S. E. Rep. 242) in conflict with these principles. The accident there occurred on the public wharf ground at Wheeling, where the party had a right to be. The case of *Hawker* v. *Railroad Co.*, 15 W. Va. 629, as to negligence before or after the cattle were seen, has no relation to this case. It involved a mere question of variance between allegation and proof.

The last assignment of error is the refusal to grant a new trial, because the verdict was contrary to law and evidence, and is wholly untenable. Under this head I may say that both law and evidence were against the plaintiff. I think it already has been shown that the law is against her, and that the facts already stated show that the evidence is against her. Under the latter head, I will only add that, when a verdict has been approved in the trial-court, this Court will set it aside only where it is manifestly and palpably contrary to the evidence or without sufficient evidence, when, after rejecting all evidence of the defeated party in conflict with that of the successful party and giving the latter's evidence full faith and effect to prove all that may fairly be deduced from it, the verdict still is wrong. And I add to the facts above appearing that the clear preponderance of evidence is that the train was backing at six or seven miles an hour, as required by rules, and that the bell rang at all crossings. The judgment is affirmed.

AFFIRMED.