JAMES M. CAMPBELL, *as Administrator of the Estate of David G. Campbell, deceased*, v. THE ·KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY.

1. PERSON ON TRACK—*Injury—Presumption.* When an engineer sees an adult person walking upon the railroad-track in front of a moving train, who appears to have the use of his senses and not to be under any physical or mental disability, he has a right to presume that the trespasser will heed the warnings given, and will step from the track in time to avoid injury.

2. CONSCIOUS TRESPASSER, *Killed—When no Recovery—Demurrer to Evidence.* C., a man of mature years and in the possession of his faculties, went upon a railroad-track where there was no

crossing, about the time that a passenger-train was due to pass over the same; and, while walking between the rails, the passenger-train approached, going in the same direction as C., and when he was seen by the engineer, the whistle of the engine was repeatedly sounded and the speed of the train checked, but it was not stopped until it came in contact with C. and killed him. *Held,* Upon the testimony, that C. was a conscious trespasser, and that there can be no recovery for his death unless the injury was willfully or wantonly inflicted; that, under the circumstances, willful or wanton negligence on the part of the engineer could not reasonably be inferred, and that the trial court ruled correctly in sustaining the demurrer to plaintiff's evidence.

*Error from Johnson District Court.*

ACTION by *James M. Campbell,* as administrator of the estate of David G. Campbell, deceased, against *The Kansas City, Fort Scott & Memphis Railroad Company* to recover damages for the death of plaintiff's intestate. The court sustained a demurrer to plaintiff's evidence, and he brings the case here. All the material facts are stated in the opinion, filed July 6, 1895.

*A. Smith Devenney,* for plaintiff in error.

*Wallace Pratt, I. P. Dana,* and *Chas. W. Blair,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : James M. Campbell, as administrator of the estate of David G. Campbell, deceased, brought this action to recover damages for the death of David G. Campbell, alleged to have resulted from the gross negligence of the railroad company. In the petition it was averred that on November 11, 1890, in the daytime, David G. Campbell was walking upon the railroad-track of the company, near the village of Merriam, but not at or upon any railroad-crossing, and that while so walking, a passenger-train approached on the same track, and going in the same direction,

and that the persons in charge of the train managed it in a grossly negligent, reckless, willful and wanton manner, and at a high, unusual, and reckless rate of speed, so as to run against, knock down, and run over David G. Campbell in a violent and forcible manner, causing injuries from which he died after a lapse of about 10 minutes. The answer of the railroad company was a general denial, and an averment that the injury and death of Campbell were due to his own negligence. When the testimony of the plaintiff was finished, the court sustained a demurrer to the same, holding it to be insufficient to warrant a recovery.

It appears that Campbell resided with his family upon a farm about one-fourth of a mile from the railroad-track and the town of Merriam, where he had resided for many years. A highway called "Main street," running east and west past Campbell's farmhouse, crossed the railroad-track, to the post-office and other buildings. The railroad runs north and south through Merriam. Between the Campbell farm and the railroad was a highway, running parallel with the railroad, from the town to Merriam park. On November 11, 1890, at about 10 o'clock A. M., Campbell came from the post-office east of the track, walked west on Main street until he arrived at the railroad-track, and then turned south toward Merriam park. The track had recently been changed, and the men were then engaged in ballasting and surfacing a portion of the track over which Campbell was walking. A passenger-train going south was due about that time, and as the line of the road was straight there was an unobstructed view for a considerable distance up and down the track. A passenger-train came from the north, traveling in the same direction that Campbell was, composed of an engine, tender, baggage-car,

mail-car and four or five passenger-coaches. It did
not stop at Merriam station, but as it approached
Main-street crossing it gave the usual whistle, and
while running over the new track the speed of the
train was somewhat slackened. When within about
364 feet of the place of accident, the engineer dis-
covered that Campbell was walking upon the track,
and several blasts of the whistle in the nature of
danger-signals were given. After running a short
distance further other blasts or danger-signals were
given and the speed of the train was slackened, but as
Campbell did not leave the track he was struck by the
engine, knocked down, and the front wheel of the en-
gine ran upon or over him. At that time the engine
had come to a full stop, when the engine was backed
off, releasing him. Campbell walked between the
rails of the main track with his head down, only stop-
ping for a moment at one time to speak with a work-
man who was engaged in ballasting the trakc. He did
not look backward to see whether a train was following,
and, although the day was clear, it appears that he
did not hear the warning signals that were given. He
was 65 years of age, in good health, and appeared to
be in the full possession of his faculties. He lived in
plain view of the railroad-track, and as he often passed
along or over the road and saw trains frequently
pass over the same, he was necessarily familiar with
the situation and its surroundings. A few feet away
and parallel with the railroad was a highway upon
which he could have walked with safety to his des-
tination.

It is clear from the testimony that he was a con-
scious trespasser, and that, under the circumstances,
his conduct was recklessly negligent. A railroad-
track, between crossings, belongs exclusively to the

railroad company, and it is well settled that all persons who venture along the same do so subject to the risks incident to so hazardous an undertaking, and, if injured by a train of the company, there is no liability unless the injury was willfully and wantonly inflicted. In *Mason v. Railway Co.*, 27 Kas. 84, it was said that —

"A railway company has exclusive right to occupy, use and enjoy its railway-tracks, . . . and such exclusive right is absolutely necessary to enable it to properly perform its duties, and any person walking upon a railroad-track . . . without the consent of the company is held in law to be there wrongfully, and therefore to be a trespasser; and in case of an injury happening to such person while so trespassing upon it, from the movement or operation of the cars of the company over it, he is without remedy, unless it be proved by affirmative evidence that the injuries resulted from negligence so gross as to amount to wantonness."

See, also, *Railway Co. v. Whipple*, 39 Kas. 531; *Tennis v. Railway Co.*, 45 id. 503; *Railroad Co. v. Todd*, 54 id. 558.

We are unable to find testimony sustaining the view that Campbell's death was due to the intentional or wanton negligence of the engineer. It is contended that Campbell was seen 500 feet ahead of the engine, and therefore the engineer should have stopped the train before reaching him. An engineer, however, is not bound to stop a train whenever he sees a person ahead upon the railroad, but has a right to assume that an adult person apparently in the possession of his faculties will exercise his senses and step out of the way of danger before the engine reaches him. The engineer is required to keep a reasonable lookout for trespassers upon the track, and to exercise such care as the circumstances require to prevent injury to them. Campbell was undoubtedly seen by the en-

gineer several hundred feet away ; but he was awake and moving, and appeared to be in the full possession of all his senses and faculties. Although there were some piles of ballast along the track, he could have stepped aside without difficulty ; and, as there was no apparent disability, the engineer had · a right to presume until the last moment that he would heed the warning which had been given, and leave the track in time to avoid injury. The engineer gave the usual signals for the crossing ; and we have seen that as the engine approached Campbell danger-signals, or what one witness called "screeching whistles," were repeatedly given. The speed of the train was finally slackened, and although not in time to save his life, the conduct of the engineer does not evince a wanton and reckless disregard for human life, nor an intention to inflict a willful injury. One of the men at work upon the track testified that he saw Campbell's danger and ran toward him shouting, and that he believes the engineer must have seen him. The action of this witness, if seen by the engineer, would do no more than to notify him that Campbell was upon the track, and from the warnings that the engineer had already given it is plain that he saw Campbell before that time. It is true that the train might have been stopped 100 feet or more away, if there had been any apparent necessity for stopping. If Campbell had been lying or sitting upon the track, apparently intoxicated or asleep, it would have been the duty of the engineer to have made an earlier effort to stop the train. Where the appearances indicate that a person upon the track is in such a condition as to be either insensible of his danger or unable to avoid it, those in charge of the train must use all available means con-

1. Person on track—injury —presumption.

sistent with the safety of those on the train to stop. The same rule is applied with reference to a young child, who is unable to understand the peril of being upon a railroad-track. In the case of *Railway Co. v. Whipple*, supra, a little boy, nine years of age, who was deaf and dumb, wrongfully went upon a railroad-track, and was run down and seriously injured. Those upon the train had no knowledge of the infirmities of the boy until after he was struck; and, while warnings were given and precautions taken which would have been sufficient if the person upon the track had been an adult, it was not sufficient care and attention toward an infant of tender years who might not fully comprehend his peril. It was said that the engineer must have seen that he was a child of tender years, and that it was incumbent upon him, after he saw the boy upon the track ahead of the engine, to use reasonable care to avoid doing him any injury. In that case, however, the following language was used by the court: "If in this case the plaintiff were an adult, we might perhaps say, as a matter of law, upon the facts disclosed upon the trial, that he could not recover." Campbell was a man of mature years, who had the use of his faculties; and, as he was moving and apparently capable of taking care of himself, the engineer had a right to presume until the last moment that he would leave the track and not be run over. As was said in a somewhat similar case decided by the supreme court of Minnesota:

"Even if he erred in his judgment as to the probability that the plaintiff heard the signals and would step aside before the train should reach him, and hence erred as to the time when he ought to have reversed his engine and applied the brakes, there is nothing to warrant the belief that he acted in reckless disre-

gard of the plaintiff's safety." (*Johnson v. Truesdale*, 46 Minn. 345.)

See, also, *Railway Co. v. Judd*, 36 N. E. Rep. (Ind.) 775, and cases cited; *High v. Railroad Co.*, 112 N. C. 385; *Finlayson v. Railroad Co.*, 1 Dill. 579; *Railroad Co. v. Harman*, 8 S. E. Rep. (Va.) 251; *Reardon v. Railway Co.*, 114 Mo. 384; Beach, Contr. Neg. 394; 2 Rorer, Rlds. 1027, 1032.

The train was running at a diminished rate of speed. Repeated warnings had been given, and that the engineer was endeavoring to stop and to save him is shown by the fact that the engine was stopped about the time the deceased was struck. Under the circumstances we think willful and wanton negligence on the part of the engineer cannot be reasonably inferred, and therefore the trial court correctly ruled that the evidence was insufficient to establish a liability against the company for Campbell's death.

2. Conscious trespasser, killed—when no recovery—demurrer to evidence.

The judgment of the district court will be affirmed.

ALLEN, J.: The evidence offered by the plaintiff tending to show gross negligence on the part of the engineer is very weak, yet I am not prepared to say that it is wholly wanting. It is clear that the engineer saw the deceased on the track, and also observed that he did not heed the first signals that were given, and that he could have avoided running over him. So much being shown, I think the question should have been left with the jury to say whether or not there was gross negligence. But the proposition advanced in the opinion to which I desire to enter my especial dissent is that the engineer had a right to presume until the last moment that Campbell would leave the track, and not be run over. I am aware

that this statement finds support in the authorities, but I cannot yield my assent to it. The slight inconvenience arising from the stoppage of a train is not to be weighed at all against a human life. An engineer who sees a person on the track ahead of him should take all necessary precautions to avoid killing him, and should resolve all doubts as to whether a person will take care of himself or not in favor of the person in peril. It might be wise for the legislature to prevent people from trespassing on railroad-tracks, and to impose even severe penalties on those who do so, but the mere fact that a person is a trespasser, walking along a railroad-track, in my judgment furnishes absolutely no excuse for wantonly running over him, nor for the adoption of so barbarous a rule as that the engineer may omit all precautions, and rely on the trespasser getting out of the way at the last moment it is possible for him to do so, and when it is beyond the power of the engineer to save him.

MARTIN, C. J.: I concur in the syllabus and in the opinion of Mr. Justice JOHNSTON, and I do not think that either is justly subject to the criticism made by Mr. Justice ALLEN. And yet the doctrine stated in the opinion to the effect that "the engineer had a right to presume until the last moment" that Campbell would heed the warning and leave the track in time to avoid the injury, although well supported by the authorities, might easily be misinterpreted in some cases. I do not understand it to mean that the engineer need not check the speed of the train until it has actually come upon the trespasser, but he may presume that such person will get off until the last moment in which it would or ought to seem practicable to stop the train before colliding with such

trespasser; and for a slight error of judgment on his part he ought not to be held culpable nor the railroad company responsible. In this case, if the engineer erred as to the time when he should have commenced to use the appliances to check the speed of his train, his delay was for a fraction of a second only, and this would not indicate wantonness nor recklessness.