Pool vs. The Chicago, Milwaukee & St. Paul Railway Company.

56   227
94   486

56      227
54 LRA 116n

*November 8 — November 21, 1882.*

RAILROADS. *(1) Carriage of passenger by hand-car: presumption of authority: duty as to road-bed.*
COURT AND JURY. *(2, 3) Questions of negligence. (4) Province of jury.*
REVERSAL OF JUDGMENT. *(4) On evidence, after new trial denied.*
SPECIAL VERDICT. *(5) When questions to be presented.*

1. Plaintiff, who had at times been employed as a detective by the defendant railway company, was directed by its authorized agent to come at once from P. to K. (places on the road), and on going to the station at P. for the purpose of responding to the call, found there upon the track of the company a hand-car ready for his reception and upon which he was requested to make the journey. *Held:*

    (1) In the absence of any evidence tending to show the contrary,

it will be presumed that the hand-car was furnished and tendered to him by an authorized agent of the company.

(2) The company was bound to have its road in a reasonably safe condition for the safe transportation of the plaintiff on such hand-car, and in such position thereon as he should take under the direction of the person in charge thereof.

2. The question of negligence is generally a mixed question of law and fact, and will not be taken from the jury except in very clear cases.

3. It having been decided (53 Wis., 657) that the allegations of the complaint that the plaintiff sat upon the hind end of the hand-car with his feet hanging down, under the direction of the person in charge of the car, and without being aware of the danger of the position, did not show negligence on his part contributing to an injury caused by plank placed on the defendant's road between the rails being loose, warped and sticking up so as to hit his heels,— additional facts, brought out by the evidence on the trial, in regard to the dimensions of the car, the height of the platform on which the plaintiff sat above the road-bed, and the danger which he would be in from the handle of the lever with which the car was worked, are *held* not to be sufficient to justify the court in taking the question of negligence from the jury.

4. It is the province of the jury to pass upon the credibility of the witnesses, and upon the consideration and weight which shall be given to the testimony; and when they have passed upon it, and the trial court refuses to grant a new trial upon the ground that the verdict is against the clear preponderance of the evidence, this court will not reverse the judgment on that ground where there is any evidence to support it.

5. The questions to be submitted to a jury for a special verdict should be settled upon before the argument, and the refusal to submit a question presented by a party after the argument, is not error, especially where the same question has been submitted in a more general form.

APPEAL from the Circuit Court for *Sauk* County.

The case is thus stated by Mr. Justice TAYLOR:

"This case was before this court on an appeal from an order overruling a demurrer to the plaintiff's complaint, and upon such appeal it was held the complaint stated a cause of action. 53 Wis., 657. The cause was remitted and the de-

fendant answered. A trial was had upon the merits, and a verdict rendered in favor of the plaintiff, upon which judgment was entered, and the defendant again appeals. In order to fully understand what was determined by this court on the former appeal, it is necessary that the material parts of the complaint be stated. The complaint, after alleging that the defendant is an incorporated railway company, and a common carrier of passengers, and had one of its lines of road in Sauk county, in this state, and stating the residence of the plaintiff at and previous to the accident, proceeds as follows:

" ' That said plaintiff agreed to go and consented to be by said defendant transported from Portage City to Kilbourn City aforesaid; that it thereupon became the duty of said defendant to carry said plaintiff to Kilbourn City aforesaid safely and in a safe conveyance on its road or track, and to not unnecessarily expose the life and limbs of the said plaintiff to danger or permanent injury; that the said defendant, disregarding its said duty in the premises, instead of providing said plaintiff a suitable car and engine for the purpose of said transportation, or some other suitable conveyance, brought up to the depot at Portage City aforesaid the ordinary hand-car used by section men in working on the track of the said defendant, and directed the said plaintiff to ride thereon; that said plaintiff trusted in the defendant, its agents and servants, and supposed and believed at the time that he, the said plaintiff, might be safely transported to Kilbourn City on said car; that the track and road-bed was suitable for that purpose, and safe, or at least reasonably so, and that said car would be by the defendant, its agents and servants, properly run and managed; and the said plaintiff was wholly unaware of danger, and was not at any time herein mentioned guilty of any carelessness, or in any manner negligent; that said plaintiff thereupon got upon said car, and was directed by the defendant, its agents and serv-

ants, where to sit or stand. At the end of the section the said defendant, its agents and servants, transferred said plaintiff to another like car, in charge of other men, also agents and employees of the defendant. Again, at the end of the section, and when within about one mile of Lewiston station, on the defendant's road, between Portage City and Kilbourn City, said plaintiff was transferred to another hand-car run and managed by the agents and servants of said defendant, acting for and in the place of said defendant; that the person in charge of said last-mentioned car directed the plaintiff to take his seat on the hind end of said car and let his legs and feet hang over and off the hind end, and directed otherwise the said plaintiff just how and where to sit; and the said plaintiff, believing, trusting, and relying upon said defendant, its agents and servants as aforesaid, did as directed.

" ' That thereupon said defendant, its agents and servants, propelled and ran said car, carrying said plaintiff as aforesaid; and the plaintiff charges that the said agents and servants, acting for and in the place of said defendant, ran and propelled said car at an unnecessarily fast, careless, and dangerous rate of speed, and that the said plaintiff was at the time, by the express directions of said defendant, its agents and servants, seated upon said car in a dangerous and unnecessarily hazardous position, considering the speed at which the said car was being propelled as aforesaid; that when about eighty rods west of Lewiston station aforesaid on said road, and where the same crosses a highway, the heels of said plaintiff, so hanging over the hind end of said car as aforesaid, struck against the ends of some plank that had been carelessly and negligently placed upon said crossing, and between the iron rails of the defendant's track, by the defendant, its agents and servants. The ends of said plank instead of lying straight and flat, level with the grade, were loose, warped, and sticking up above where they

ought to have been from four to six inches, just high enough to hit the plaintiff's heels sitting as aforesaid; that said plaintiff was thereby thrown with great force and violence backwards, and under the lever and lever handle by which the car was propelled, said lever and handles striking the plaintiff with great force and violence on the back of the neck and shoulders, doubling up the said plaintiff, and greatly and seriously injuring the said plaintiff permanently and for life.'

" The remainder of the complaint sets forth the plaintiff's injuries and damages, and demands judgment."

[There was evidence to the effect that the space between the edge of the platform of the hand-car and the point at which a perpendicular line drawn from the lever would meet such platform, was eighteen inches in width; and that the top of the platform was seventeen inches above the rails, and twenty and one half inches above the ties if the latter were straight.]

*John W. Cary*, for the appellant.

*J. W. Lusk*, for the respondent.

TAYLOR, J. Upon the former appeal it was argued by the learned counsel for the appellant, as it is on this, that the defendant is not a common carrier of passengers by hand-cars, and that the plaintiff, having consented to travel by such car, assumed all the risks and dangers incident thereto. The chief justice, who delivered the opinion on the first appeal, answers this claim on the part of the company as follows: " The correctness of this proposition may be conceded as a general rule. But the complaint states that the plaintiff at divers times had been employed by the defendant to assist in ferreting out thefts, where property had been stolen from its cars, and that he was requested by an authorized agent of the company to go from Portage City, where he resided, to Kilbourn City, for the purpose of aiding in dis-

covering the thieves who had stolen property from its cars at the latter place; and that, upon his going to the depot at Portage City, the means of conveyance provided by the company or its agents was a hand-car, upon which he was directed to ride. This shows that this mode of transit was authorized by the company; and the company was certainly under obligation to use reasonable care to insure his safe carriage in that manner. The company was bound to know whether the hand-car was a suitable, proper, and reasonably safe means for transportation; and further, it assumed the duty of seeing to it that the car should be used with due care by those entrusted with its management, even though the relation of common carrier and passenger did not exist between it and the plaintiff. This was a legal duty springing from the relation of master and servant. It is true, the plaintiff was in the employ of the company as a detective, but he could not know the risks and perils of this mode of carriage. It would be unreasonable to say he assumed them all by his employment. Certain perils and dangers he doubtless did assume, but they were those incident to the detection and arrest of criminals. That was the business in which he was engaged. Therefore, in transporting him from Portage City to Kilbourn City, the company was bound to provide proper means of conveyance and see that they were used with due care, so as not to subject the plaintiff to unnecessary danger." It is said upon the argument of this case that there is no sufficient proof that the hand-car for his transportation from Portage City to Kilbourn City was furnished by any authorized agent of the company, and therefore what was said by this court in the opinion above quoted is not conclusive upon this appeal against the company. The evidence shows that the plaintiff was directed by an authorized agent of the company to come at once from Portage City to Kilbourn City, and that when the plaintiff came to the station at Portage for the purpose of responding to the call, he found

there upon the track of the company a carriage ready for his reception, and upon which he was requested to make the journey. In the absence of any evidence tending to show that this carriage was not furnished and tendered to him by an authorized agent of the company, we must presume that it was so furnished and tendered; and what was said in the opinion on the former appeal on this question is strictly applicable and must control in favor of the plaintiff.

Upon the second point made by the counsel for the appellant on the present appeal, that there was no negligence on the part of the company or its agents proved on the trial, the chief justice says in his opinion on the former appeal: "It is alleged in the complaint that the planks had been carelessly and negligently placed at a highway crossing between the rails, so that instead of lying straight and flat, level with the grade, they were loose, warped, and sticking up above where they ought to have been, four or six inches — just high enough to hit the plaintiff's heels as he was riding on the car. Now, it is said that this shows no defect in the road-bed, because the plank would in no way interfere with the safe passage of the trains of the company over its line of road. But we are unable to say, as a matter of law, that it was not negligence for the company to leave the plank warped and elevated as alleged." Upon the trial, the jury have found as a fact that this allegation was partially proved, at least, and this finding is based upon such evidence as must sustain it on this appeal. We do not think the test of the negligence of the defendant in this case is to be absolutely determined by the fact that the track was reasonably safe for the passage of the ordinary passenger and freight trains over the same. The company had voluntarily undertaken to transport the plaintiff over its road on a hand-car; it was bound, therefore, to have its road in a reasonably safe condition for the safe transportation of the plaintiff on such car; and if it was not reasonably safe for that purpose, then it is to be charged with negligence;

and if the plaintiff's position on the car was taken by the direction of the person in charge thereof, then the company is to be charged with negligence if the road is not in a reasonably safe condition for the safe passage of the plaintiff in such position on such car. The jury have found against the defendant upon this question also, and there is certainly evidence in the case to sustain such finding.

It is also very earnestly contended by the counsel for the appellant that the evidence clearly shows that the plaintiff was guilty of contributory negligence, and that such negligence on his part was the real cause of his injury. This point was also discussed on the former appeal; and in the opinion, after stating how the plaintiff sat upon the hind end of the car with his legs and feet hanging downwards towards the ground, it is said: "It is alleged that the person in charge of the car directed him to take his seat on the hind end of the car, and let his legs and feet hang over the end in the manner they did; so it appears that the plaintiff did not voluntarily, or, acting on his own inclination, assume that position. He was wholly unaware of the danger of sitting in this manner on the car, and did what probably most persons would do under like circumstances — obeyed the direction of the person who had the car in charge. Now, can it be said that this act on his part amounted to negligence? It is said he was not excused in taking such position, even at the express direction of the person in charge of the car, because he was bound to take proper precautions for his own safety. If the perils and danger of sitting in that manner on the end of the car had been known to him, or were obvious, so that with the exercise of ordinary prudence he could have foreseen and comprehended them, there would be great force in this argument. Plain obvious dangers may be guarded against by all, as counsel contends; and it is the duty of all persons to exercise proper diligence to avoid them under all circumstances. But in this case it is alleged the plaintiff was una-

ware of the danger of his position. He relied, and we think he had the right to rely, on the judgment of the person in charge of the car, presuming that by following his directions in the matter he would not expose himself to any unnecessary or unusual peril." The verdict of the jury has found the facts as alleged in the complaint, and, unless we overrule our former opinion, we think we cannot hold, as a matter of law, that the plaintiff was guilty of contributory negligence in sitting upon the hind end of the car with his feet hanging down. The evidence does not change very materially the statements in the complaint. It does, however, bring out some facts which do not appear in the complaint, in regard to the dimensions of the car, the height of the platform on which the plaintiff sat above the road-bed, and the danger he would be in from the handle of the lever with which the car was worked. We do not think these additional facts make out such a clear case of negligence on the part of the plaintiff in taking his seat on the hind end of the car, at the direction of the person in charge thereof, as would justify the court in taking the question of his negligence from the jury.

The question of negligence is generally a mixed question of law and fact, and is never taken from the jury except in very clear cases. *Filer v. Railroad Co.*, 49 N. Y., 47–50. In this case the plaintiff was injured by getting off a car when it was in motion. It was proved in the case that when the train arrived at the place where the plaintiff desired to get off, the train ran very slow, but did not come to a full stop, and that the brakeman told the plaintiff to get off, and in attempting to do so she was injured. The court say: "That there was more hazard in leaving the car while in motion, although moving ever so slowly, than when it is at rest, is self-evident; but whether it is imprudent and careless to make the attempt depends upon circumstances;" and held that under all the circumstances it was proper to submit the

question of contributory negligence .to the jury   The case came before the court again in 59 N. Y , 351, and it was then held by the court that if the brakeman directed her to get off while the cars were in motion, she had the right to assume that she could get off with safety. although the train was in motion.   Justice GROVER, who delivered the opinion in 59 N. Y , says: "The employees upon a train. including brakemen, are in the line of their duty in assisting passengers in getting on and off the train, and in directing them in procuring seats.   Passengers rightly assume that these persons are familiar with all the movements of the train, and know whether they can, under the particular circumstances, get on or off, or move upon the train with safety.   When the conductor or a brakeman directs a passenger to get off the train, although in motion, such passenger will naturally assume that he knows that it is entirely safe or he would not give the direction."

In *McIntyre v. Railroad Co.*, 37 N. Y., 287, it was held that "it is not negligence in law for a passenger to follow the direction given by a servant of a railroad company, and to pass from one car to another while the same are in motion. Whether in such case it is negligence is a question for the jury."

In *Clark v. Street Railroad Co*, 36 N Y , 135, the court held that if a passenger is riding upon a platform of a car in a place of danger, his negligence is *prima facie* established; but that he may rebut that presumption by showing that he was riding there at the invitation of those having the car in charge.   Justice GROVER says: "The proof of the plaintiff in the present case tended to show that the inside of the car was full, and that the platform was full, so that no more persons could stand thereon; that in this situation the car was stopped for the plaintiff to get on, that upon his getting on there was no place for him except standing on the steps, that, while riding in this situation, the conductor called upon him

for and received from him his fare. These facts, if true, authorized the jury to find that the plaintiff had been invited by those having charge of the car to ride in that place, and that an implied assurance had been by them given that that was a suitable, safe place for him to ride. Under such a state of facts, I do not think that negligence can fairly be imputed to the plaintiff for riding in that position." It was held that the question of the plaintiff's negligence was properly submitted to the jury.

These authorities fully justify the position taken by this court on the former appeal, and the remark of the chief justice, in speaking upon that point, that "he [the plaintiff] relied — and we think he had the right to rely — on the judgment of the person in charge of the car, presuming that by following his directions in the matter he would not expose himself to any unnecessary or unusual peril." On the trial the jury found, as a matter of fact, that Mr. Meyer, the person in charge of the car, did direct the plaintiff to sit on the hind end of the car as he was sitting at the time the accident happened. And they have also found, as a matter of fact, that he was unaware of the danger of the position, and was not guilty of negligence in doing so. If the facts found by the jury are sustained by the evidence, then the plaintiff was clearly entitled to the damages the jury found in his favor.

It is insisted that the jury erred in their findings of fact, especially as to the questions: "Whether the plaintiff was told by Mr. White not to sit down on the car; that he would have no chance? Did Henry Meyer tell the plaintiff at Lewiston to stand up by him on the front of the car, and take hold of the lever? Did Henry Meyer tell him at Lewiston that it was dangerous to sit on the car with his feet hanging down? Was the plaintiff told by Mr. White and Meyer, or by either of them, that he should stand up, and that it was dangerous to sit down and let his legs hang down in the manner described?" These questions were all answered in the negative

by the jury, and it is claimed that the answers are wholly unsupported by the evidence. The bill of exceptions shows that the plaintiff's own testimony fully sustains the finding of the jury upon each question, and that his testimony was corroborated upon some of the questions by the witness Charles West.

Whatever might be our opinion as to the weight of the testimony upon these questions or upon any one of them, we are unable to say that there is no testimony to support the findings of the jury. It is the province of the jury to pass upon the credibility of the witnesses and upon the consideration and weight which shall be given to the testimony, and when they have passed upon it, and the trial court refuses to grant a new trial on the ground that the verdict is against the clear preponderance of the evidence, this court will not reverse the judgment on that ground when there is any evidence to support it.

It is also claimed that the circuit court erred in refusing to submit to the jury a question proposed by the defendant. It is said that the court refused to submit the question because it was not proposed until after the argument of the case to the jury was closed. We think that, regularly, the questions to be submitted to the jury should be determined before the case is argued, and that the statute clearly intended that they should be so determined. This ought to be so, otherwise the counsel for the respective parties cannot intelligently present the case to the jury. It is to be presumed that the court did settle upon and determine what questions would be submitted to the jury, and that the respective counsel were advised upon that subject before the argument to the jury commenced   If the counsel desired that any particular form of question should be submitted to the jury, he should at least present the question to the judge for his consideration before the argument to the jury is commenced, so that the opposite counsel may have the opportunity to present

his argument to the jury upon the question so suggested. We do not think the court erred in refusing to present the question of the plaintiff's contributory negligence in the form requested by the defendant, at the time the same was proposed. He had presented the same question in another form of a more general character, and it must be presumed that such fact was known to the respective attorneys before their arguments were made, and that the arguments were made upon the question so submitted.

We think the questions submitted to the jury upon the question of negligence sufficiently covered the questions of the negligence of the defendant, and of contributory negligence on the part of the plaintiff, and that it was not error to refuse to submit the question proposed by the defendant after the arguments were closed. The submission of the question at that time was a matter in the discretion of the court. The evidence offered by the defendant on the trial, and which was rejected, was clearly inadmissible. The questions either called for the opinion of the witnesses upon questions of fact, which it was the province of the jury to determine from the evidence, or for purely hearsay evidence.

*By the Court.*— The judgment of the circuit court is affirmed.