# CHARLESTON.

CHRISTY'S ADM'R *v.* CHES. & O. R'Y CO.

Submitted January 30, 1891.—Decided March 14, 1891.

1. DAMAGES—RAILROAD COMPANIES.
   One who is injured while using a railroad track for his own convenience elsewhere than at a lawful crossing, can not recover damages of the railroad company, unless such company be guilty of wanton or gross negligence.

2. DAMAGES—RAILROAD COMPANIES.
   The statute requiring the bell to be rung or a whistle to be

blown at crossings is intended for the protection of those passing over the track at such crossings, not for those using the track elsewhere; and said statute is complied with, when either the bell is rung or a whistle is blown.

*Kenna & Chilton* for plaintiff in error, cited Code (1884) c. 135, s. 1, cl. 9 ; 32 W. Va. 494 ; 31 W. Va. 116 ; 32 W. Va. 6 ; Code (1884) c. 54, s. 61 ; Code (1887) c. 43, s. 31 ; 30 W. Va. 228 ; Id. 778 ; 1 Her. Est. 2, 6 ; 2 Her. Est. 754, 876 ; 45 Mo. 252 ; 2 Wood R'ys 1319 ; Id. 1302, 1303, 1305 ; 59 Ala. 471 ; 38 Ia. 120 ; 33 Ind. 366 ; 59 Ala. 471 ; 44 Pa. St. 175 ; 30 W. Va. 228 ; 29 Minn. 465, 109 U. S. 478 ; 61 Cal. 326 ; 14 Nev. 351 ; 45 N. Y. 846 ; 31 Pa. 510 ; 40 Ohio 128 ; 48 Wis. 606 ; 17 Wall. 657 ; 28 W. Va. 610 ; 128 U. S. 91 ; Id. 443.

*J. E. Chilton* and *Simms & Enslow* for defendants in error, cited 23 W. Va. 229 ; 12 W. Va. 116 ; 24 W. Va. 357 ; 25 W. Va. 692 ; Code, c. 54, s. 61 ; 32 W. Va. 6 ; 29 W. Va. 407 ; 4 A. & E. R. R. Cas. 580 ; 19 A. & E. R. R. Cas. 20 ; 109 U. S. 478 ; 32 W. Va. 116 ; 28 W. Va. 732 ; Beach Contrib. Neg. 14, 15, 37 ; Woods R'y Law 1064 ; Id 1320 ; 39 N. Y. 358 ; 31 A. & E. R. R. Cas. 441 ; 34 Id. 60 ; Woods R'y Law 1265 ; 12 A. & E. R. R. Cas. 77 ; 8 A. & E. R. R. Cas. 217 ; 25 Mich. 274 ; 15 A. & E. R. R. Cas. 469 ; 37 Ia. 316 ; 19 Ia. 492 ; 95 U. S. 697 ; 14 A. & E. R. R. Cas. 687 ; 42 N. Y. 468 ; 6 R. I. 211 ; Bish. Cont. § 665 ; 53 Ill. 336 ; 18 N. Y. 432 ; 8 Ohio St. 250 ; 72 Ind. 31 ; 30 Minn. 31 ; McKenney Law Fel. Serv. 284.

HOLT, JUDGE :

Trespass on the case in the Circuit Court of Kanawha county, brought under the statute (chapter 103, Code W. Va.) by the administrator of John W. Christy against the Chesapeake & Ohio Railway Company, for causing Christy's death. In the first trial the jury brought in a verdict for two thousand and five hundred dollars damages. This verdict the court on motion of the defendant set aside. On the second trial the court on motion of defendant excluded from the jury all the evidence of plaintiff; whereupon the jury returned a verdict for defendant of not guilty. This

the plaintiff moved to set aside; the court overruled the motion; plaintiff excepted, the court certifying all the facts proved. Plaintiff also excepted to the ruling of the court setting aside verdict on first trial, certifying the facts proved; so that the evidence produced on both trials is in the record.

On the first trial the facts proved were as follows: On 17th September, 1888, the deceased, John W. Christy, was in the employment of the Chesapeake & Ohio Railway Company as a section-hand, his duty being to beat up rock and stone along the track for ballast. On the day aforesaid, early in the morning, it being foggy, he was at his work near Scott's depot in Cabell county near a switch leading down towards the depot. Christy was hard of hearing, but could generally hear the whistle and the bell. While standing between the track and the switch he was asked by a fellow-workman whether he heard the train coming, and he replied that he did. Very soon the east-bound fast passenger train came in sight, running at the rate of about thirty five miles per hour, to be seen for about three hundred feet. It did not slacken its speed and when the train was within about sixty or seventy feet of Christy he stepped up one step backward on to the main track, with his face turned away from the coming train. A fellow-workman halloed, "Look out for the train!" but as he turned to make a spring the train struck and killed him instantly. Six hundred feet west of Scott's depot, and three hundred feet west of Christy, there was a railway crossing used by the public, with the signal put up by the company, "Railroad Crossing; Look out for the Locomotive." Whether the bell was rung or whistle sounded by the engineer or fireman at the distance of at least sixty rods from the crossing, and kept ringing or whistling for a time sufficient to give due notice of the approach of such train before such crossing was reached (section 61, c. 54, Code), is not certified as a fact, but the conflicting evidence on this point is given. The engineer and fireman testified that the whistle was sounded for the depot, and the bell was rung for the crossing at a distance of more than sixty rods from the crossing, and was kept ringing until the

crossing was passed.    One of plaintiff's witnesses says he
thought he heard the whistle blow for the depot, and that
he heard the bell ringing about or near the depot, and that
he could not tell where it was.    Two other witnesses for
plaintiff testified that they did not hear the bell ring or
the whistle blow, and if such whistle or blowing had occured,
they would have heard it.    The court below, who heard
the testimony, seems to have been of opinion that the bell
was rung and the whistle sounded.

In *Spicer* v. *Railway Co.*, 34 W. Va. 514, it was held that
"a person using a railroad track as a footpath for his own
convenience, elsewhere than at a lawful crossing, and
injured by a train while so doing, can not recover damages
of the railroad company, unless it be guilty of wanton or
gross negligence;" and that "the statute (Code 1887 c. 54,
s. 61) requiring a bell to be rung or a whistle to be blown
at crossings is designed for those crossing the track at such
crossings, not for those using the track elsewhere for their
convenience as a foothpath."    In this case the plaintiff,
Spicer, was in the employ of the company.    The train was
moving at the rate of thirty five miles an hour—fifty feet
per second.    What could be done by any one on the train
to save the unfortunate man, who stepped on the track
when the train was only sixty or seventy feet—one and two
fifths seconds—away ?    The verdict was properly set aside,
and a new trial awarded.

In the mean time the plaintiff's administrator died, and
the suit was revived in the name of the present plaintiff,
John F. Hubbard, administrator *de bonis non*, and on the
25th March, 1890, the case was again tried before a jury,
and, after plaintiff had introduced all his evidence and
rested his case, the defendant moved the court to exclude
from the jury the evidence of plaintiff.    The court granted
the motion, excluded the evidence, and the jury found for
the defendant.    Plaintiff then moved the court to set aside
the verdict and grant him a new trial, but the court refused,
and plaintiff excepted, and the bill of exceptions, contain-
ing all the facts proved, is made part of the record.

I can not more briefly give the difference in facts proved
on the second trial from facts proved on the first trial than

to give them in full here on the second trial, and I do this by taking the orderly statement made by plaintiff's counsel in their brief.

On September 17, 1888, decedent, John W. Christy, was a section hand in the employ of the defendant company on their railroad one thousand two hundred and forty five feet east of their depot called "Scott." His duty was to assist in attending to the track; to break up rock to be used for ballast on the track, the rock being placed on the side of the main line. The train was due at Scott depot at 6:21 in the morning; came to Christy at 6:26, being five minutes late. West of Christy three hundred and fifteen feet is a public road crossing the track, called "Handley's Crossing," with the sign up "Railroad Crossing; Look Out for the Locomotive." On the morning named—a foggy one—Christy being on the ground early before the boss of the section, the through passenger train, called "the fast line," came east at the rate of thirty five or forty miles an hour, on a grade going down thirty three feet to the mile. No bell or whistle was sounded between Scott depot and the place where Christy was at work. The train did not slacken speed until after it had passed Christy. He was standing at his work for defendant near the danger line, if not on it. When the train reached the crossing, Christy stepped on the track, his face towards the east, away from the coming train. He was hard of hearing, but could have heard bell or whistle sounded at the crossing. The train struck Christy at full speed, killing him on the spot. The rumbling noise of the coming train was heard by others who were at or near the crossing. The train could have been seen by Christy at a distance of six hundred or nine hundred feet, if he had looked, and the train could have been stopped within the distance of six hundred feet. He was from forty six to fifty years old, and was earning one dollar per day. Christy stepped on to the track with his face turned away from the coming train when it was within five seconds—three hundred feet—of him. There can be no two opinions that the direct and immediate cause of his death was his own fault or negligence. The whistle was sounded and the bell rung in passing the depot, four hundred and fifteen yards away,

if not at the crossing ; and the rumbling of the coming train was heard by others, and, according to the case of *Spicer* v. *Railway Co.*, cited above, it was not the duty of the company to ring or blow at the crossing for Christy's benefit, who was not there, but got on the track at another place. And again, it is the opinion of at least two of the court that he was the fellow-servant of the engineer and fireman, upon whom the statute imposes the duty of ringing the bell or sounding the whistle at the crossing. It may have been due in part to Christy's deafness, but, if so, that was his misfortune, and not the company's fault.

From these facts—and I have given them as plaintiff's counsel on the second trial claimed and stated them to have been—I hardly think there is room for different minds to draw different conclusions, under the case of *Spicer* v. *Railway Co.*, above. The motion to exclude in its new and special sense is either intended to obviate the want of power in our court to compel a nonsuit, or is a roundabout equivalent of a motion for the court to instruct the jury for one or the other party in this case. If intended for the first, the court ought to intimate, according to our practice, that it is a proper case for a nonsuit; but if plaintiff insists on the evidence going to the jury, then the judge may instruct against him. If intended to be an instruction to the jury to find for the one or the other, that is a different thing, and quite different from a demurrer to evidence, which, if not as old as jury-trial itself, was a well-established incident and concomitant when the right of trial by jury was deemed important enough to be fundamentally prescribed for most state courts, as well as for federal courts.

The trial by jury, like all existing things, is undergoing slow but constant change. Nevertheless, in its most essential features, it must still be dear to the American people. If not, why, as in our own State, do they stringently insist upon keeping sure and steadfast the constitutional guaranty ? On this point we here cite a few out of very many cases. *Jones* v. *Railroad Co.*, (1888) 128 U. S. 443 (9 Sup. Ct. Rep. 118); *Kane* v. *Railway Co.*, 128 U. S. 91 (9 Sup. Ct. Rep. 16); *Drakely* v. *Gregg*, 8 Wall. 242 ; *Hickman* v. *Jones*, 9 Wall. 197 ; *Barney* v. *Schmeider*, Id. 248 ; *Mangam*

v. *Brooklyn*, 38 N. Y. 455 ; *Pfau* v. *Reynolds*, 53 Ill. 211 ;
*Railroad Co.* v. *Von Stienburg*, 17 Mich. 99; *Stephens* v. *Brooks*,
2 Bush. 137 ; *Way* v. *Railroad Co.*, 35 Ia. 585 ; *Hill* v. *Canfield*,
56 Pa. St. 454 ; *Railroad Co.* v. *Bibb*, 37 Ala. 699.

To say nothing about our constitutional guaranty of the
right of trial by jury, where natural inferences are to be
drawn from facts and circumstances, or where there must
be a balancing of conflicting inferences or the qualifying of
one inference with another, or where the credibility of
witnesses or the weight of evidence has to be determined,
this practice of making a motion to exclude evidence, in-
stead of demurring to evidence often protracts litigation
and leads to delay.

And, as a matter of fairness, the advantage is all on one
side. The party who is moved against, has to take all the
chances of losing his case finally and irretrievably, while
the mover takes no risk except that of having his case tried
over again, or of the case going on as though his motion
had not been made, or, if he sees fit, of taking an appeal when
it is overruled. The motion to exclude, as an indirect pro-
ceeding in lieu of a motion to instruct the jury to find for
the plaintiff or defendant, as the case may be, may have its
proper place and function ; but it should not in many cases
be permitted to supersede a demurrer to evidence, as regu-
lated by our practice, in which we consider the evidence
according to certain rules.

But we are of opinion that in this case there is no evi-
dence tending to show any liability, under our decision in
*Spicer* v. *Railway Co.*, above ; that the evidence of plaintiff,
although competent, does not of itself conduce in any degree
to the proof of defendant's liability for the death of J. W.
Christy ; and therefore we affirm the judgment of the court
below.

AFFIRMED.