# CHARLESTON.

## DAVIDSON *v*. PITTSBURG, C. C. & ST. L. RY. Co.

Submitted September 9, 1895—Decided Dec. 4, 1895.

1 PLEADING—DECLARATION.

A declaration containing the necessary averments, so that judgment according to law and the very right of the cause may be given thereon, is sufficient, although not artistically and critically drawn.

2. INSTRUCTIONS.

The circuit court, in its sound discretion, may refuse to give numerous instructions which are to the same legal effect, and only vary as to the position of the words, clauses, and sentences used in their construction. It may also decline to give numerous instructions as to facts virtually taken from the consideration of the jury by other instructions given.

3. EVIDENCE—VERDICT—REVERSAL.

When the evidence appearing in the record plainly, clearly, and decidedly preponderates against the verdict of the jury this Court will reverse the judgment, set aside the verdict, and grant a new trial.

J. DUNBAR and PALMER & PALMER for plaintiff in error, cited 91 Pa. St. 21; 15 W. Va. 628; 15 S. R. 511 (p. 513 bot. and 514); 140 Mass. 337; 115 N. Y. 104; 106 N. C. 301; 28 W. Va. 738; 95 Pa. St. 398; 104 Mass. 52; 12 S. E. R. 555; 83 Va. 554; 15 S. E. R. 81; 18 S. E. R. 782; 68 Iowa, 606; 100 Mass. 214; 71 Ill. 500; 83 Ind. 319; 62 Md. 479; 95 M. S. 702; 14 S. E. R. 234; 36 W. Va. 165; Buswell, Law of Personal Injuries, §§ 96, 143, 149; Booth, Street Railway Law, §§ 390, 391 and note.

JOHN A. HOWARD and MELVILLE D. POST for defendant in error, cited 38 W. Va. 645; 15 W. Va. 628; 9 W. Va. 252; 27 W. Va. 285: 31 W. Va. 483; 29 W. Va. 763; Code, c. 125, s. 6; 32 W. Va. 370; 5 Am. & Eng. Enc. Law, 352; 30 W. Va. 798; 34 W. Va. 232; 37 W. Va. 606; 36 W. Va. 165; 17 W. Va. 190; 5 S. E. Rep. 573, 576; 4 S. E. Rep. 24; 19 S. E. Rep. 730; 25 L. R. A. 784, 787, note iv; 4 Am. & Eng. Enc. Law, 53, 89; 27 Gratt. 455; 84 Va. 798; 53 Wis. 634; 58 Wis. 646; 11 S. E. Rep. 412; 58 Cal. 513; 43 Md. 534; 59 Tex. 64; 13 S. E. Rep. 454; 39 W. Va. 86.

DENT, JUDGE:

John Davidson, an infant about nine years of age, was permitted by a fireman for the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, on the 23d day of August, 1893, to ride upon a hand car transporting some laborers from the town of Wellsburg, Brooke county, to their place of labor out on the company's line towards the city of Wheeling. An extra morning train ran into the hand car, and the boy was killed. His father, as his administra-

tor, brought suit against the company, in the Circuit Court
of Brooke county, and obtained a judgment on the verdict
of a jury for three thousand, five hundred dollars.

The defendant now asks a reversal of said judgment for
the following assigned errors, to wit: "(1) The circuit
court erred in overruling your petitioner's demurrer to
said plaintiff's declaration, and to each count thereof. (2)
The court erred in the admission of irrelevant, improper,
and incompetent evidence given by the plaintiff, and in
the refusal to admit proper, competent, and relevant evi-
dence offered by the defendant, as set out in bill of excep-
tions No. 2. (3) The court erred in giving to the jury the
five instructions in behalf of the plaintiff as shown by bill
of exceptions No. 3. (4) The court erred in refusing to
give to the jury the instructions asked for on behalf of the
defendant as shown in bill of exceptions No. 4. (5) The
court erred in refusing to submit to the jury the special in-
terrogatories as shown in bill of exceptions No. 5. (6) The
court erred in giving to the jury instruction 'A' as shown
in bill of exceptions No. 6. (7) The court erred in over-
ruling the motion of the defendant to set aside the verdict
of the jury and grant it a new trial in said cause, and in
rendering a judgment on said verdict as set out in bill of
exceptions No. 7."

As to the first and second counts, the ground alleged for
the demurrer is that the declaration sets out that the infant
was there alone by invitation from the company, and that
there is no act of negligence set out in either of these
counts. Attorneys appear to make and rely upon objec-
tion without reading the declaration to see what it does
contain. If the child was there by invitation of the com-
pany, it was its duty to protect it from the negligent acts
of its servants as in this case set out—that they "did then
and there carelessly, negligently, unlawfully, and willfully
operate, propel, and drive its said hand car" so as to cause
his death. *Pool* v. *Railroad Co.*, 56 Wis. 227 (14 N. W. 46);
*Prince* v. *Railroad Co* , 64 Tex. 144; *Railroad Co. v. Gray*,
27 Am. & Eng. R. Cas. 318. The same may be said as to
the third count. After alleging that the child was there
by invitation and permission of the defendant, and was en-

titled to notice of approaching trains, it sets out by positive averment that the defendant did then and there "carelessly, negligently, and improperly wholly fail" to give such notice, by reason whereof the said hand car was run against, into, upon, with great force and violence, by the said engine and cars, and that the carelessness, negligence, and wrongful conduct and default of the said defendant caused the death of the said child. There is no question of the sufficiency of the allegations. But the objection that the defendant appears to rely on is that the declaration fails to allege that the death was caused by the negligence of the servants of the defendant in charge of the train. This is a question that would more properly arise on a motion to exclude the evidence or to instruct the jury. The third count contains a general allegation of negligence on the part of the defendant, and then sets out the violent running of the engine and train against the hand car, and follows up with the allegation that by reason of the negligence last aforesaid, which necessarily refers to the running of the train against the hand car, the death was caused. While the count might have been placed beyond possible objection by using the word "negligently" before the words "run against," yet, according to the rule laid down in the case of *Poling* v. *Railroad Co.*, 38 W. Va. 645 (18 S. E. 782) it is sufficient so that judgment according to law and the very right of the cause may be given.

As to the second ground of error, the whole evidence is set out in bill of exceptions No. 2, and the defendant insists that it is the duty of the court to examine the whole evidence, and ascertain whether there was any irrelevant or incompetent testimony admitted or rejected. On a careful examination there appears to have been none that could have to the slightest extent entered into or affected the case, but the evidence admitted appears to have been proper, and that not admitted properly rejected. Many such objections are entirely too trivial to deserve a moment's consideration, and only serve as clogs to the wheels of justice.

The following are the five instructions given for the plaintiff and instruction "A" given by the court.

Plaintiff's instruction No. 1: "The court instructs the jury that, according to the law of West Virginia, it is the duty of the engineer and fireman on an engine to keep a constant lookout ahead for children that may be trespassing on the railroad track, so as to avoid injury to them, if possible; and, if they neglect to do so the railroad company employing them is liable for any injury caused by their negligence." "Given."

Plaintiff's instruction No. 2: "The court instructs the jury that, even if the plaintiff's decedent, John Davidson, was in the position of a trespasser on the defendant's property, yet it was the duty of the defendant to exercise ordinary care to avoid injury to him; therefore, if the jury believe from all the evidence that said John Davidson could have been seen by the engineer or fireman on the engine mentioned in evidence by the exercise of ordinary care in time to stop the engine and avert the accident, it was their duty to do so, and, if they neglected to keep a constant lookout ahead, and thereby failed to see him in time to stop, the defendant railway company is liable, and the jury should find for the plaintiff." "Given."

Plaintiff's instruction No. 3: "The court instructs the jury that, even if the plaintiff's decedent, John Davidson, was in the position of a trespasser on the defendant's property, it was the defendant's duty to exercise ordinary care to avoid injury to him. Therefore, if the jury believe from all the evidence in this case that the engineer or fireman on the engine mentioned in the evidence did see the hand car mentioned in evidence, on which the said John Davidson was riding, in time to stop the engine and avert the accident, it was their duty to stop the engine as soon as possible, and if they could have stopped in time to avoid injury to him by the exercise of ordinary care, and neglected to do so, the defendant is liable, and the jury should find for the plaintiff." "Given."

Plaintiff's instruction No. 4: "The court instructs the jury that if they believe from the evidence in this case that the plaintiff permitted his decedent, John Davidson, a boy about nine years of age, to go from his home at Wellsburg after or to get elderberies, but did not know that he was

going to ride on a hand car, he, the plaintiff, is not by reason of such permission, guilty of contributory negligence, and the defendant can not be relieved from liability solely because the plaintiff thus permitted his said son to go from home." "Given."

Plaintiff's instruction No. 5: "The court instructs the jury that in this case, if they find for the plaintiff, they will assess his damages at such sum as they may deem just and right so as not to exceed ten thousand dollars." "Given."

Instruction A: "The court instructs the jury that, if they believe from the evidence that the plaintiff's decedent, John Davidson, was killed while riding on defendant's hand car, and that the defendant was not accustomed to carry passengers on its hand car, and had not authorized its servants who were in charge of the hand car in which said decedent was so riding to carry passengers thereon, they will find a verdict for the defendant, unless they further find that the engineer and fireman in charge of the extra passenger train mentioned in the evidence failed to use ordinary care to avoid such killing, even though they also find that said decedent was riding on said hand car by permission of the servants in charge thereof."

The following are the sixteen instructions asked by the defendant, but refused, and the four given.

Instruction No. 1: "The jury are instructed that the defendant is only liable for the neglect or wrongful acts of its servants within the scope of their authority and in pursuance of its business, and that, unless they are satisfied that the immediate cause of the death of John Davidson was negligence on the part of those in control of the extra passenger train, then the plaintiff must show that the section foreman, Mullen, had authority to carry John Davidson on defendant's hand car, or they must find for the defendant." "Refused."

Instruction No. 2: "The jury are instructed that it is the duty of the plaintiff to show by a preponderance of evidence that John Davidson was a passenger, and not a trespasser, upon defendant's hand car, otherwise he can not recover damages in this case. The jury are instructed

that plaintiff can not recover unless he shows that the person inviting or permitting John Davidson to ride on the hand car was acting within the scope of his authority in giving such invitation or permission. The jury are instructed that plaintiff can not recover if he knew and consented that his son John should ride upon said hand car, and also knew that the railway company did not allow any one except its employes to ride upon said hand car." "Refused."

Instruction No. 3: "The jury are instructed as a matter of law that if they find from the evidence that John Davidson entered upon the hand car of the defendant with mere naked license or permission of Thomas Mullen, such license or permission will not create a duty in favor of John Davidson, or 'impose' upon the defendant, who grants the license or permission, an obligation to provide against damages or accidents which may arise out of the existing conditions of the defendant's property, for the licensee enters upon the defendant's property subject to all the dangers attending his going, and so enjoys the license subject to its concomitant perils." "Refused."

Instruction No. 4: "The jury are instructed as a matter of law that a person who voluntarily exposes himself to obvious danger, without any reason or propriety or necessity to justify him in so doing, is, as a matter of law, guilty of negligence, and assumes all the risks attending his acts." "Refused."

Instruction No. 5: "The jury are instructed as a matter of law that if the decedent, John Davidson, did not act as reasonable care adapted to the circumstances of his case would dictate, and his father, George Davidson, negligently suffered him to be in the place where the accident occured which caused his death, both these facts concurring constitute negligence which directly and immediately contributed to the injury." "Refused."

Instruction No. 6: "The jury are instructed that all persons riding upon any conveyance of a carrier, whether such conveyance is intended and used for the carrying of passengers or not, without the consent and permission of the carrier, or his agent duly authorized to give such consent or permission, are trespassers." "Refused."

Instruction No. 7: "The jury are instructed that, as matter of law, if it appear that the defendant was not negligent in the selection of its servants and agents, and that no authority or discretion was vested in the servant to do the act or acts complained of in the plaintiff's declaration, then the defendant is not to be held liable therefor. The jury are further instructed as a matter of law, the owner of property owes no special duty to an injured person merely because such person is an infant, or incapable; and he is not responsible for any injury suffered by such person unless the circumstances show the injury has been caused by gross negligence." "Refused."

Instruction No. 8: "Counsel for the defendant asks the court to instruct the jury, if the jury find from the evidence that the deceased was using the railroad for his own convenience elsewhere than at a lawful crossing, the plaintiff can not recover in this action unless the defendant was guilty of wanton or gross negilgence." "Refused."

Instruction No. 9: "The jury are instructed that, unless they are satisfied that there was negligence on the part of those in control of the extra passenger train, so great that the injury to John Davidson would not have occurred but for such negligence, then it is the plaintiff's duty to show by a preponderance of the evidence that John Davidson was a passenger, and not a trespasser, upon defendant's hand car; otherwise they must find for the defendant." "Refused."

Instruction No. 10: "Findings of the jury upon particular facts. First. Was the plaintiff's decedent a passenger upon the hand car or a tresspasser or a licensee? Second. Was the car upon which plaintiff's decedent was riding at the time of his death one on which passengers were usually or habitually carried? Third. Who was the employe of the defendant company in charge of the hand car, and what was the nature of his employment? Fourth. Was the giving of permission by the employe in charge of this hand car to the plaintiff's decedent to ride an act within the scope of his employment, or authorized by the defendant company?" "Refused."

Instruction No. 11: "Counsel for the defendant asks the

court to instruct the jury: 'One who is injured while using a railway track for his own convenience elsewhere than at a lawful crossing can not recover damages of the railroad company unless such company be guilty of wanton or gross negligence.'" "Refused."

Instruction No. 12: "The statute requiring the bell to be rung or the whistle to be blown at crossing is intended for the protection of those passing over the track at such crossings, not for those using the track elsewhere; and said statute is complied with when either the bell is rung or the whistle is blown. *Christy's Adm'r* v. *Railway Co.*, 35 W. Va. 117 (12 S. E. 1111)." "Given."

Instruction No. 13: "Counsel for the defendant asks the court to instruct the jury: 'The question of negligence in the case at bar is subsidiary to the question of agency, which latter must be determined by the jury before they can reach the consideration of the former.'" "Refused."

Instruction No. 14: "In order to bind a principal for the acts of an agent, or to render the principal liable for the wrongful or negligent act of the agent, that act must have been done while the agent was pursuing the purpose for which he was employed, must be within the scope of his employment; that is, it must have been one that was either expressly or impliedly authorized by the principal. If not expressly authorized, it must have been one for which authority could be implied from its nature." "Refused."

Instruction No. 15: "If the jury find from the evidence that the plaintiff's decedent rode upon the hand car by and with the permission of an employe of the defendant company, they will then inquire who that employe was, and what was the nature of his employment; and if they then find that it was not within the scope of his employment to receive and carry passengers, but to do this was against the orders of his superior, the defendant company, their verdict must be for the defendant." "Refused."

Instruction No. 16: "The jury are instructed that if the plaintiff wished to claim for John Davidson the rights of a passenger upon defendant's hand car, he, the plaintiff, must show by a preponderance of the evidence that the person in charge of the hand car had authority to carry passengers on the hand car." "Refused."

Instruction 17: "The jury are requested to find specially: First. Did the riding of John Davidson upon said hand car further the interests of the railroad company? Second. Was John Davidson a trespasser upon said hand car? Third. Had the section foreman, or any of the men under him, any authority to take any person on said hand car as a passenger? Fourth. Did John Davidson unlawfully collude with the section foreman to ride upon the hand car, knowing that he had no right to ride upon said hand car, and for the purpose of avoiding the payment of his fare on defendant's passenger train?" "Refused."

The court refused to give the said instructions except No. 12, and the defendant excepted.

Instructions given for the defendant:

Instruction No. 1: "The jury are instructed that, unless they are satisfied from the evidence that the person or persons in charge of the extra passenger train failed to stop the train as soon as a prudent man of the requsite skill and in the exercise of ordinary care would have done under the circumstances, and unless they further believe that John Davidson's death was caused by that failure, they will find for the defendant."

Instruction No. 2: "The jury are further instructed that if they believe from the evidence that the engineer in control of the extra passenger train was keeping the proper lookout which it was his duty to keep; that he saw the hand car as soon as it could be seen under the circumstances, and applied all the means within his power as quickly as they could be applied under the circumstances, and that he continued to use all the means within his power, which a prudent man with the requisite skill and in the use of ordinary care would have used under the circumstances, and that the appliances for stopping and controlling the train were in good order—then they will find for the defendant."

Instruction No. 3: "The jury are instructed that, as to the question of negligence upon the part of that person or those persons in control of the extra passenger train mentioned in the evidence, negligence may be defined as a failure to discharge the duty of taking ordinary care to the

injury of one to whom the duty is due, such failure being the direct, proximate cause of the injury; that ordinary care is such as a prudent man of the requisite skill will take under the circumstances of the particular case; and that the plaintiff must show by a preponderance of evidence such failure upon the part of the person or persons in charge of the extra passenger train before the defendant can be held liable for the acts or omissions of such person or persons."

The instructions given, taken as a whole, treat the deceased as a mere trespasser or licensee on the track, and take away from the consideration of the jury every question except the negligence of the servants of the defendant in charge of the passenger train. Such being the case, the court did right not to give any of the instructions asked by the defendant not directly relating to such negligence, as they had no bearing on the issue as submitted, as modified and defined by the instructions given. As to this issue the court fully instructed the jury, and nothing could be gained except confusion by giving the same identical instruction over and over again, with a mere change in construction of the sentences and words used. Such unnecessary repetition is an abuse which the circuit court, in its sound discretion, should not hesitate to suppress. The only question left by the court for the jury to decide was whether the boy, being a helpless trespasser on the track, was negligently run down and killed by the servants of the defendant in charge of the train. This is the effect of the first instruction given for the defendant. The court having thus put the boy into the position of a mere trespasser, and virtually excluded from the jury the consideration of the fact that the boy was there by permission of the servants of the company, for the reason that the evidence manifestly failed to show that such servants, in granting such permission, were acting within the scope of their authority, it was proper and right that the law alone governing such trespasses and trespassers should be given.

Plaintiff's first, second, and third instructions are in accordance with the decisions of this Court in the cases of *Gunn* v. *Railroad Co.*, 36 W. Va. 165 (14 S. E. 465) and

*Raines* v. *Railroad Co.*, 39 W. Va. 50 (19 S. E. 565) and *Carrico* v. *Railroad Co.*, 39 W. Va. 86 (19 S. E. 571).

There could possibly be nothing improper in the fourth instruction, for the mere fact that the father let his child go from home would not excuse the defendant for negligently killing him.

The fifth instruction conforms to the statute. *Turner* v. *Railroad Co.*, 40 W. Va. 675 (22 S. E. 83).

Instruction "A," given by the court, is clear and succinct, and is in no wise open to the objection urged by defendant, especially when taken together with the instructions in its behalf. It is possible that the court, in submitting by this instruction "A" to the jury the question as to whether the foreman had authority to carry passengers on the hand car, might have misled the jury, but it is not probable under the evidence and in the light of the other instructions given.

This, then, brings us to the merits of the case arising on the motion for a new trial because the verdict was contrary to the evidence and the law as propounded in the instructions of the court. The whole matter of inquiry was limited to the sole fact as to whether the servants of the defendant in charge of the passenger train were guilty of negligence. The law governing such cases as this is laid down in the ninth point of the syllabus in *Carrico* v. *Railway Co.*, 39 W. Va. 87 (19 S. E. 571): "Though plaintiff be chargeable with negligence contributing to the injury, yet, if the defendant know of the danger to the plaintiff arising from his negligence, and can by ordinary care avoid the injury, but does not, he is liable for his negligence, notwithstanding the plaintiff's negligence." All trespassers into dangerous situations are guilty of negligence, yet if, by ordinary care on the part of those knowing the danger, it can be averted, it is their duty to exercise such care in tender consideration of human life. And in the case of *Raines* v. *Railway Co.* (fifth point of syllabus) 39 W. Va. 51 (19 S. E. 565) it was held: "If those running a railroad train discover a trespasser in imminent danger on the track they must use all reasonable exertion to avoid inflicting injury; otherwise the company will be held re-

sponsible." In 2 Wood, Ry. Law, p. 1267, § 320, the author says: "The rule may be said to be that a railway company is bound to keep a reasonable lookout for trespassers upon its track, and is bound to exercise such care as the circumstances require to prevent injury to them." The lookout in all cases is necessary, owing to the dangerous speed at which trains are permitted to pass through the country, but the care to be exercised depends entirely upon the circumstances. The situation and age of the trespassers, among many other things, must be considered. If it be an adult, apparently in possession of all his faculties, the ringing of the bell and sounding the whistle or both is all that is required, as such person is supposed to be able to avoid danger, when properly warned, by stepping out of his way. But it is different with helpless infants of tender years, and animals. If necessary for their protection, the train must be stopped. In this case a hand car, laden with men and boys, was on the track, wrongfully, let it be admitted; nevertheless it was the duty of those on the train to keep a lookout for just such obstructions, and to use ordinary care to prevent a collison, if possible, and the destruction of human life and property occasioned thereby; and, if the engineer failed to see them when he should have seen them, and failed, in the exercise of ordinary prudence, to stop the train when he should have stopped it, and thus prevented the accident, he is guilty of negligence for which the defendant must answer. Under the former rules of practice on a motion to set aside the verdict of the jury, the court only looked at the evidence of the plaintiff, and disregarded all the evidence of the defendant in conflict therewith, but section 9, chapter 131 Code, has overturned this practice, and requires the court to consider all the evidence, thus making the court to some extent triers of the facts involved, and the weighers of the evidence; and if, in the opinion of this Court, notwithstanding the finding of the jury and the approval of the trial court, the verdict is plainly against the decided and clear preponderance of evidence as it appears in the record, it must be set aside, and a new trial awarded. *Johnson* v. *Burns*, 39 W. Va. 659 (20 S. E. 686).

In this case the engineer testifies that he was on the lookout, saw the hand car about three hundred feet away, and did everything in his power to prevent a collision. The fireman corroborates him. There were four men and three boys on the hand car, all facing in the direction they were going, none of whom saw the train until just in time to jump and save their lives. The boy was too small to get out of the way, the foreman tried to save him, but he was caught and killed. None of the witnesses know how rapid the hand car was moving, otherwise than rapidly, and making a great deal of noise. The hand car, according to the evidence, must have been going at the rate of not less than fifteen miles per hour; the train was traveling at the rate of thirty five miles per hour; hence they were approaching each other at the rate of fifty miles per hour, or one thousand feet in less than fifteen seconds. The engineer and fireman say that when they first saw the hand car it was about three hundred feet away. The men on the hand car say that when they first saw the engine it was right onto them, and all they could do was jump, except one of them guesses it must have been about five hundred feet away, yet he gives no good reason why, if such was the case, they did not save the boy while saving themselves. In either event, the engineer had less than eight seconds to take in the situation, make up his judgment what was best to do for the safety of his passengers, train, and himself, and the hand car and the men thereon, shut off the steam, and set the air brakes, by which time, under the circumstances, he would be onto, if not past, the hand car. The men and boys on the hand car had just the same opportunity to see the engine as the engineer had to see them, and they were under the same obligation to be on the lookout, and get out of the way of the train, as they at this time were trepassers on the track, as the foreman had failed to go to the telegraph office in obedience to his instructions, and find out whether this extra was coming; yet they hardly saw the engine in time to jump out of its way. In the step-ladder illustration, the man standing where the hand car was supposed to have been could see the man on top of the step-ladder, where the train was

supposed to have been, just as easily as the latter could see
the former.   And the fact that no one on the hand car
saw the engine until it was right on them fully corrobor-
ates and sustains the evidence of the engineer.   To rebut
the circumstances, which speak more accurately than
words, the plaintiff raises a mere suspicion that the en-
gineer was not on the lookout, but was engaged in conver-
sation with the fireman, and relies on the fact that the
train ran so far beyond the point of collision to contradict
the positive testimony of the engineer as to his attempt to
stop the train.   Also a witness visits the spot, with a ten
foot step-ladder, and goes down the track as far as he can
see a man standing at or near the point of collision, and
finds the distance is nine hundred feet.   The track curves
at this place, and the parties seem to lose sight of the fact
that the hand car is coming around one side of the curve
at the rate of fifteen miles per hour, while the engine is
approaching around the other at the rate of thirty five miles
per hour, and makes a very different state of affairs from
that where one man is standing still and another is sitting
on top of a step-ladder, nine hundred feet away, having
nothing else to occupy their minds but to look straight at
each other.   Running a step-ladder standing still is not
just the same as running an engine and seven coaches at
the rate of thirty five miles per hour.

These are the only items of evidence appearing in the
record to sustain the plaintiff's verdict, and, if they stood
alone, uncontradicted, they are hardly sufficient to raise a
*prima facie* case of negligence against the engineer, but
they are overwhelmed by the circumstances of the accident,
the conduct and evidence of the men and boys on the hand
car, and the evidence of the engineer and fireman, so that
the calm determination of any reasonable mind, removed
from the excitement and influences of a jury trial, can not
be otherwise than that the evidence plainly, clearly, and
decidedly preponderates in favor of the defendant, so much
so as to leave only a bare suspicion that the engineer might
possibly have been guilty of negligence.

To sustain this verdict we have to be able to say from
the evidence that the engineer, being in a position to know

or knowing, the perilous condition of the deceased, did not use ordinary care and prudence to save him from death. This we are wholly unable to do, and therefore the judgment will be reversed, the verdict of the jury set aside, and a new trial awarded.