Cook, J.
Corwin E. Duer was a boy fifteen years of age, residing at Andover, Ashtabula county,upon the line of the Lake Shore, and Michigan Southern Railway Company; Andover was the northern terminus of one of the sections of the railway for repair purposes, and the section, extended south a distance of five miles. This section was under the control of a section foreman by the name of Terrill. Young Duer, with several other boys'about his own age, had been in the habit of riding on the hand car during the summer of 1894, and up to the time of his injury of tbe summer of 1895, by the consent of Terrill and his men, sometimes by their invitation; this occurred two or three times a week during said period. On the 20th of June, 1895, about five o’clock in the evening. Terrill ordered two of his men to take the hand car and go south about a mile, and bring in a flag signal that had been placed along tbe track, to notify approaching trains of tbe repairs that were being made a mile north. Duer requested of the section foreman, Terri 1. the privilege of accompanying the men, and this request was granted, as it was also to the three other boys who had been accustomed to ride on tbe hand car. After tbe signal was obtained, and upon the return of tbe hand car, north. Duer stood upon the front of the band car, and outside the handle bar. with his back to tn« north, assisting in propelling the hand car, while the two men were immediately in front of him. but behind the handle bar, facing north, and also assisting in propelling the hand car. ' The other three boys were upon the rear end of the hand car. The hand car was going rapidly, in order to make Lasbure’s crossing, where the hand car could be more easily removed from the track. It was raining, and the handle bar beiug wet and slippery, young Duer’s hands slipped from the handle bar, and he' *514 fell off in front of the hand car, and was run over by it, and lost his left leg. The evidence does not show that any of the officers of the company knew of the practice of the boys riding on the hand car; neither does it show that any of the employes of the railway company knew of this practice, except Terrill and his men. The road master, the immediate superior of Terrill, testified that he did not know of the practice, and never heard of it until after the injury to Duer; and so far as he knew, none of the officers or agents of the company, knew of it. This evidence was uncontradicted. The evidence further shows that there was a rule of the company, absolutely prohibiting any person or persons, from riding on the hand car, except those engaged in repairs. '
It is a well settled principle of law, that the owner of dangerous machinery, or appliances, can not permit such machinery or appliances to remain in a public place where children are liable to congregate, and be attracted thereby, and get upon the same, and be injured; or even upon his own premises when the place is not public, if he has reason to anticipate that children will get upon the same and be injured, without taking proper and reasonable precaution to so lock or protect such machinery, or appliances, that children will not be injured in the innocent use of the same.
Of such character are the cases where torpedoes are left upon a path upon a railway, where the public generally have travelled for a long time, with the knowledge of the company. Such is the character of the cases of leaving turn-tables, and other dangerous machinery in public plaees, or upon the premises of the owner, where he should anticipate that children would get upon the same, and be injured, In all such cases it is the duty of the owner to use reasonable’care to guard and protect the same, so that the children will not be injured from the exercise of their youthful instincts to play around, and get upon nov.el and attractive machinery or appliances.
This case is entirely different. The hand car was placed in the hands of a trusted agent and his subordinates. No complaint is made that they were not competent or careful, or if not so, that the company had any knowledge of such fact. They were expected to be constantly with the hand *515 •car, and when not in use to safely lock the same up. This injury occurred when the hand car was in use, and under the control of the section foreman, and his men. Furthermore, there was a rule of the company, that boys should not •be upon the hand car, and there was no evidence that the •company knew or should have known of such use of the hand car. Under these circumstances, it can not be claimed that there was any license by the company, that the boys .•should ride upon the hand car,
What then, was the legal efféct of the section foreman permitting the boy, at his request, to ride upon the hand car, and of the men working under the orders of the section -foreman, permitting him to occupy the position he did, and -which caused his injury.
The section foreman was employed for, and his duties •were of a specific and definite character; his duties, and that of his men, were to keep the track in repair, and the hand car was in their possession, and under their control for that purpose, and that purpose alone. The hand car was not placed under their control for the purpose of carrying persons, either for compensation or gratuitously. Hand cars are not for the carrying of passengers, but for the transportation of tools and implements, and the section men, It differs in that regard from the caboose of a freight train, which, under the orders of the conductor, specially given, may be and frequently is, used for that purpose. There can be no implication that the foreman of the section or his men, had any authority to so use the hand car, as i was in no wise in the line of their duties, and they were •specifically prohibited by the rule, from so doing. The rule was not waived by the company, as there is no evidence -that the company knew of its violation; indeed, no one interested in the company, knew of the violation but thQ foreman and his men, and they would hardly convey the information. Unless the acts of the section foreman and his men can be legally attributed to the company, it is clear the company was not the cause of the injury, as the maxim qui faeit per alium faeit per se” can apply only when there is an authority either general or special. We are therefore persuaded, that the section foreman1 had no authority whatever, express or implied, to permit young Duer *516 to ride on the hand car, and hie act, and that of his men, under the circumstances, set forth in the record, in no manner binds the company, and the company is not responsible for the injury complained of.
The case of Flower and Wife, against the Pennsylvania Railway Company, 69 Penn. St., 210, cited by counsel for plaintiff, in error upon argument, is directly in point. In' that case it was held:
“At a station where defendant’s train of cprs had stopped, the engine, tender, and one car ran down to the water' tank in charge of the fireman, who asked a boy ten years old, standing there, to put in the hose, and turn on the water; while the boy was climbing on the tender to comply with the request, some detached cars belonging to the train, came down with ordinary force, and struck the car next to the tender, whereby the boy was thrown down, and crushed to death. In an action by the parents of the boy, held;That the defendant was not liable.’’
To the same effect is the case of Hoar v. Maine Central Railroad Company, 70 Me., 65, where it was held that a person injured while riding on a hand car, has no cause of action against the company, in absence of proof that the company was accustomed to carry passengers upon a hand car.
The case of the Cleveland Terminal and Valley Company, v. Marsh, recently decided by our supreme court, reported’ in Weekly Law Bulletin, Vol. 44, No. 26, if it does not directly decide the contention in this case, in our judgment, comes very close to it. In that case, a boy of ten years of age was employed by a station agent — whose duty it was to' light the switch lamps — to assist him in lighting the lamps for an agreed consideration. While the boy was engaged in his duties under bis agreement with the agent, he was injured in handling a torpedo he had picked up from the track by the side of the rail, on his way to place one of the lighted lamps; the torpedo exploding in his hands. Counsel for the railroad company requested the trial judge to instruct the jury that under the circumstances, damages could only be recovered for a wilful injury upon the part of the company's servants, or agents; these instructions, the trial judge refused to give, and the supreme court held that the *517 jommon pleas court committed no error in that regard, for the following reason:
“That one who is invited by a servant of a corporation in charge of its work or service, to assist him therein, and does so with some purpose or benefit to be subserved in his own behalf, in addition to the purpose of assisting, is not a volunteer, and is entitled while so assisting, to be protected against the negligence of the servants of the company.”
The court based its opinion and judgment upon the fact that the boy was acting for a purpose or benefit of his own, as well as for the benefit of the station agent, the servant of the company, and holds, that if Marsh had not been working for a purpose or benefit of his own, then he would have been a volunteer, and could not recover, except upon the showing of wilful injury upon the part of the agents and servants of the company. On page 346, the court says:
“The requests are all founded upon the theory that one who, upon request, voluntarily assists the servants of a corporation in the performance of his duties, without the knowledge of the. officers, the servant having no authority to procure such assistance, is a volunteer, and can not recover from the company only for wilful injury inflicted upon him. When a person, at the request of a servant of a corporation, assists such servant in the performance of his work, without any personal benefit of his own to be secured by such assistance, he is regarded as a volunteer, and the requests to charge, would be applicable to such a case; but when he has a purpose or benefit of- his own to be secured, by such assistance, in addition to the purpose of assisting the servant, he is regarded as acting in his own behalf, with at least, the acquiescence'of the company. A trespasser who is upon the company’s premises, wrongfully, and a mere volunteer, stands upon the same footing, and is entitled to only recover for such negligence as occurs after the servant, or the company discovers his perilous situation; that is, for a wilful or intentional injury.”
'From this decision of our supreme court, it will be seen that a person who assists a servant of a corporation in the performance of his duties, without any purpose or benefit of his own, is a mere volunteer, and can only recover for a wilful or intentional injury, and we see little, if any difference in the facts of that case, and this. To the same-.effect, *518 is the case of Davidson v. P. C. C. & St. L. Ry. Co., 41 West Virginia Reports, 407. That was a case in whiclUr boy was killed, while riding on a hand”car jiby''.invitation and there was no claim made that the company would be liable, except the servant of the company acted negligently, after discovering the perils of the boy. The statement of what constitutes a wilful or intentional injury in that case, may be different from what is determined in some other cases, but it is to the same effect.
Theo. Hall, for Plaintiff in Error.
Perry & Roberts, for Defendant in Error.
Our attention has been called by counsel for defendant in error, to the case of Missouri K. & P. Ry. Co. of Texas, v. Rodgers, 35 Southwestern Reporter, 412. There is no doubt but that case is directly in point,and sustains the position taken by counsel, but the case is in direct opposition to the cases cited supra, including the one of our supreme court. Neither are we satisfied with the reasoning of the case, and if we were, after the decisions made in the Cleveland Terminal and Valley Railroad Company v. Marsh, we could not be controlled by it. It might be observed that this case differs in some respects from the case of the Cleveland Terminal and Valley Company v. Marsh. In that case the boy was employed by the agent of the company, while in this, the boy was upon the hand car for pleasure, and in direct violation of a rule of the company, of which the section foreman, and his men were fully informed; the violation of which rule,the company, or any managing agent, hád no knowledge. Under these circumstances, we are not sure that the company owed Duer any duty whatever, or would be responsible at all for the acts of the section foreman, or his men. However that may be, the evidence in this case, in our judgment, does not show that the employes of the railway company, plaintiff in error, were guilty of wilful or intentional injury, and the court having charged the jury, that it was only necessary for plaintiff below to show, by a preponderance of the evidence, that the railway company, its agents or servants, did not exercise ordinary care, in order to recover; it follows that the judgment of the common pleas court must be reversed, for the reasons that the verdict was against the evidence, and the court erred in its charge to the jury.