THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. N. N. CLINKENBEARD.

No. 14,397.   (84 Pac. 142.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Teamster—Duty of Engineer.* When, in a depot yard, in plain view of an approaching train, a teamster recklessly or negligently drives his team into a lane, between bridge-irons and other obstructions on one side and the railroad-track upon which the train is approaching on the other side, the engineer of the approaching train is under no obligation to stop his train until it is apparent to him that the driver has got himself into such a position of danger that he cannot or will not avoid a collision with the train if it proceeds.

2. —————— *Conduct of the Teamster—What the Engineer May Assume.* In such case the engineer has a right to assume, in the absence of knowledge to the contrary, that the driver is in the possession of all his faculties, that he has seen the approaching train, and that the team will be tractable and as indifferent to the approach of the train as the conduct of the driver reasonably indicates.

3. —————— *Apparent Danger—Duty to Stop the Train.* Still, notwithstanding any negligence of which the driver may have been guilty, if the engineer sees (and it is his duty to watch and see all that may be seen in his position) that the driver has got himself or his team into a trap where there is danger of a collision with the train if it proceeds, and also sees that the driver probably cannot or will not change the position of himself or of his team, it is the duty of the engineer immediately to use all available appliances to stop the train.

4. ——— *Attempt to Stop the Train—Contributory Negligence —Damages.* If, under these circumstances, the engineer does see that the driver is in such a trap, and that he will probably be unable to extricate himself, and does immediately use all available appliances to stop the train and fails to do so, and a collision occurs, and the driver is injured, the railroad company is not responsible in damages for such injury.

Error from Smith district court; RICHARD M. PICKLER, judge. Opinion filed January 6, 1906. Reversed.

### STATEMENT.

THIS was an action brought by Clinkenbeard against the railway company for damages on account of personal injuries received by him in being struck by the pilot-beam of a moving engine in the yards of the company at Smith Center, Kan. Clinkenbeard was a drayman, well acquainted with the railroad yards, which, so far as involved in this case, consisted of a wedge-shaped strip of land between the main track and the house-track. This strip was forty or fifty feet wide near the depot, and extended over 300 feet east to a point where the two tracks were connected by a switch. Clinkenbeard had loaded his wagon with long bridge-irons from a car standing on the house-track near the depot, and to drive out it was necessary for him to pass between some obstructions—consisting of bridge-irons, railroad-ties, and hand-cars—and the main track. Some of these obstructions were, at the nearest point, fourteen feet north of the north rail of the main track, and some were twelve feet north. Clinkenbeard had also, before driving out, placed a loaded wagon belonging to one Owens twenty or twenty-five feet west of the other obstructions, and only ten feet north of the main track. This alley between the obstructions and the main track was eighty feet long, east and west, and Clinkenbeard entered at the east end, intending to drive through and out at the west end. As was known to Clinkenbeard, a passenger-train was due from the east about the time he

started to drive out, and before starting he went to the main track and looked each way, especially toward the east, where he could see for a distance of 1110 feet, and saw no train. He then went and took up his lines and started to drive out, and from the time of picking up his lines did not look for an approaching train until he had entered this alley between the obstructions and the main track and had nearly reached the west end of it, although the train was in plain sight before he entered the alley. When near the loaded wagon some one hallooed to him that the train was coming. He looked and saw the train within forty or fifty feet of him, and at first whipped up his horses, and then started to run out at the side of them to escape injury to himself and was almost instantly struck in the back by the pilot-beam of the engine and very seriously injured.

Three grounds of negligence were alleged, but the jury found only that the engineer was negligent in failing to stop the train after he saw or should have seen Clinkenbeard in the dangerous position. A verdict for $2000 was returned in favor of the plaintiff. The defendant's motion for a new trial was denied, judgment was rendered according to the verdict, and the defendant brings the case here for review.

*M. A. Low, W. F. Evans,* and *Paul E. Walker,* for plaintiff in error.

*J. T. Reed,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: Many errors are assigned by the railway company, among which are the refusal of the court to sustain its demurrer to the plaintiff's evidence, the refusal of the court to give certain instructions asked by its attorneys, and the refusal of the court to set aside the verdict and special findings of the jury and grant a new trial. Except as to the last

objection we think the rulings of the court were correct. The instructions asked by the defendant, so far as they were correct statements of the law, were embraced in the instructions given by the court. Indeed, we think the instructions given to the jury by the learned judge were an admirable exposition of the law as applicable to every phase of the facts presented by the pleadings and evidence.

Yet the jury seem to have overlooked one very important element affecting the defendant's liability, viz., to make it the duty of the engineer to stop his train under the circumstances shown in this case it was essential: (1) That he should have seen or have been in such a position that he ought to have seen that plaintiff was in a place of danger from the approaching train; (2) that it should have been evident to the engineer that the plaintiff could not, or would not, so change his position as to be out of danger before the train would reach him. (C. R. I. & P. R. R. Co. v. Austin, Admx., 69 Ill. 426; Fla. Cen. & Pen. R. R. Co. v. Edward Williams, 37 Fla. 406, 20 South. 558; Campbell v. K. C. Ft. S. & M. Rld. Co., 55 Kan. 536, 540, 40 Pac. 997.) The court below correctly stated this proposition in its eleventh instruction. The twelfth, thirteenth, nineteenth and twenty-third instructions, however, gave the first but omitted the second requisite of liability as above stated. The jury should, of course, have read all of the instructions together, and should have read or considered the four instructions last named as modified by the eleventh. It is quite probable, however, that the jury may have been misled by the omission. The submission of questions Nos. 3 and 4 requested by plaintiff, omitting as they did the second element of liability, tends to strengthen this probability. With the answers thereto, the questions were as follow:

"(3) Ques. If you answer question No. 1 in the affirmative, was the plaintiff at such time in a dangerous position? Ans. Yes.

"(4) Q. If you answer question No. 3 in the affirmative, did engineer Mason see, or by the exercise of reasonable and ordinary care and diligence should he have seen him, the plaintiff, in such dangerous position? A. Yes."

In answer to the next question the jury said that the engineer saw the plaintiff's danger in time to have stopped the train before the collision. It is nowhere specifically found by the jury that the engineer saw, or ought to have seen, that plaintiff could not, or probably would not, get out of danger before a collision would occur. There is a presumption, however, that the jury found all facts necessary to sustain the general verdict. If, then, it is to be presumed that the jury found this essential fact in favor of the plaintiff, the question arises, Was there evidence to support such a finding?

The only evidence of the width of the wagon is that its extreme width from hub to hub was five feet and eight inches, and that the bridge-irons were twelve feet, the railroad-ties fourteen feet, and the other loaded wagon ten feet north of the north rail of the main track. The plaintiff testified that he drove as close to the bridge-irons and ties as possible. If he had left one foot of space between his wagon and the bridge-irons there would still have been over five feet clear from his wagon to the north rail of the track in which plaintiff could have walked. It is true the plaintiff said he was inside the north rail of the track, on the ends of the ties or close to the ends of the ties, all the time after he entered the lane between the obstructions and the track. The engineer said the plaintiff was walking along five or six feet from the north rail from the time he entered the lane till the train was within about fifteen feet of him. The engineer was certainly about right in this estimate, or the plaintiff was walking several feet nearer the track than was necessary, and could at any time have stepped nearer to his wagon and been out of danger.

Here is the situation: The engineer testified, and no witness disputed it, that he saw the plaintiff drive into this lane in plain sight of the approaching train. He had a right to assume that plaintiff was in the possession of all his faculties, knew of the approaching train, and that he had a team that was safe to drive into such a place. There was, in fact, plenty of room for both man and team to keep clear of the track and train. So long as these conditions existed the engineer was under no obligation to stop his train, and hence was guilty of no negligence in failing to do so. But the plaintiff drove near the west end of the lane to the loaded wagon, which was two feet nearer the track than the other obstructions, and had to turn his wagon so much nearer the track. His wagon was long, and to get the hind wheels of his wagon two feet south he was obliged to turn his team much nearer the track. The watching engineer then saw the danger, sounded the alarm, and applied the air-brakes, but it was too late to stop the train. The plaintiff at that time had only about three feet between his wagon and the track, perhaps less at the front of his wagon, and the pilot-bar of the engine reached over eighteen inches of this space. He turned his horses away from the track, but he himself got nearer, either in trying to manage his horses or in trying to escape, and was struck and injured.

This is not a verbatim statement of the evidence of any witness, but is in substantial accord with the evidence of all, including the plaintiff, who testified as to what occurred after he reached the loaded wagon. There is some discrepancy as to the distance the engine was from the plaintiff at the time the danger signal was given and the air-brake applied, as might well be expected under the exciting circumstances, but no evidence justifies the finding of the jury that the engineer saw the plaintiff in such a dangerous position that it was the engineer's duty to stop the train at a time when the engine was 200 feet or more away. Be-

sides, it is improbable that the jury would have made such finding had not instructions twelve, thirteen, nineteen and twenty-three permitted them to do so without further finding that the situation of plaintiff was such that it was apparent to the engineer that the plaintiff could not, or would not, move out of danger before a collision would occur. As a proposition of law this was not the situation of plaintiff until he drove between the loaded wagon and the track, and, even then, had the plaintiff's horses been as indifferent to the approaching train as the engineer had a right to assume they were, in view of the reckless manner in which the plaintiff drove them into the lane, the plaintiff could easily have avoided a collision, though the space was narrow.

However, under all the circumstances shown by the evidence, we think it was the engineer's duty immediately to stop the train as soon as he saw the plaintiff drive into the narrow space between the loaded wagon and the track, but we think the evidence fails to show that he did not do so.

The judgment is reversed and a new trial granted.

All the Justices concurring.